HELVERING, COMMISSIONER OF INTERNAL
REVENUE, *v.* THERRELL.*

No. 128.    Argued December 17, 1937.—Decided February 28, 1938.

* Together with No. 129, *Helvering, Commissioner of Internal
Revenue,* v. *Tunnicliffe,* on certiorari to the Circuit Court of Appeals
for the Fifth Circuit; No. 287, *McLoughlin* v. *Commissioner of
Internal Revenue,* on certiorari to the Circuit Court of Appeals for
the Second Circuit; and No. 597, *Helvering, Commissioner of In-
ternal Revenue,* v. *Freedman,* on certiorari to the Circuit Court of
Appeals for the Third Circuit.

*Solicitor General Reed,* with whom *Assistant Attorney General Morris,* and *Messrs. Sewall Key, Berryman Green,* and *Warner W. Gardner* were on the briefs, for the Commissioner.

*Mr. Harry M. Voorhis* for respondent in Nos. 128 and 129. *Mr. H. M. Hampton* was on the brief with *Mr. Voorhis* in No. 129.

*Mr. Bernhard Knollenberg,* with whom *Messrs. Jesse Hoyt* and *Alfred C. Bennett* were on the brief, for respondent in No. 287.

*Mr. John W. Townsend* for respondent in No. 597.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Has the Federal Government power to tax compensation paid to attorneys and others out of corporate assets for necessary services rendered about the liquidation of

an insolvent corporation by a state officer proceeding as required by her statutes?

The opinions below state the essential facts—not in dispute; make adequate references to the relevant statutory provisions; and cite numerous authorities.

No. 128.

· Under Florida statutes when a bank becomes insolvent "The State Comptroller may appoint a liquidator [subject to dismissal] to take charge of the assets and affairs of such bank . . . [who,] under the direction and supervision of the Comptroller, shall take possession of the books and records and assets of every description . . . and in his name shall sue for and collect all debts and claims belonging to it, and upon the order of the court of competent jurisdiction may sell or compound all bad or doubtful debts and on like order may sell all real and personal property . . . and sue for and enforce the individual liability of the stockholders." He shall "pay all money received by him to the State Treasurer to be held as a special deposit . . . shall make quarterly reports, or when called upon, to the Comptroller." The appointment must follow notice and be confirmed by the Circuit Court. Liquidation expenses are payable out of the corporate funds held by the Treasurer. "The compensation of the liquidator shall be fixed by the Comptroller and shall be based upon the amount of work actually and necessarily performed, and shall in no case exceed five per cent of the cash collected."

Respondent Therrell, liquidator for several banks, devoted substantially all his time to the work. He held no commission from the Governor, took no oath of office but was formally appointed by the Comptroller and gave bond. His compensation, for 1931 and 1932, paid from corporate assets, was assessed by the Commissioner for federal income taxes. The Board of Tax Appeals approved; but the Circuit Court of Appeals found immun-

ity under the Federal Constitution. *Therrell* v. *Commissioner of Internal Revenue,* 88 F. (2d) 869.

No. 129.

Respondent Tunnicliffe, liquidator of insolvent banks appointed by the Comptroller of Florida, was assessed for federal income taxes upon the sums received for services during 1931 and 1932. The Board of Tax Appeals approved; the Circuit Court of Appeals ruled otherwise upon its opinion in No. 128. *Tunnicliffe* v. *Commissioner of Internal Revenue,* 88 F. (2d) 873. Both causes present the same points.

No. 287.

Petitioner McLoughlin was employed by the Insurance Department of New York as legal counsel in the Liquidation Bureau and received for services during 1932, $5,125.00. This bureau is in charge of a Deputy Superintendent of Insurance a civil service employe whose salary is paid by the State. It employs many persons— superintendents, attorneys, bookkeepers, stenographers, adjusters, accountants, etc.

Under the statutes the Superintendent may apply to the court for an order to take over the assets of an insolvent insurance company and liquidate its affairs. When this issues the corporate charter is dissolved and the Superintendent must proceed to collect assets, adjust claims, etc. He determined petitioner's compensation and caused it to be paid from assets of the several companies in liquidation according to the time devoted to each.

The Commissioner assessed this compensation for federal income tax; the Board of Tax Appeals approved. The Circuit Court of Appeals affirmed, and definitely held it was not exempted by the Federal Constitution. *McLoughlin* v. *Commissioner of Internal Revenue,* 89 F. (2d) 699.

No. 597.

Freedman, employed as an attorney in Pennsylvania's Department of Justice, received annual salary of

$3,000.00. The Attorney General has power to appoint attorneys to represent any department, board or commission of the State and fix their compensation. The Secretary of Banking has broad powers over banks. When one becomes unsound he may, after notice and hearing and with the Attorney General's consent, take possession and wind up its affairs. All necessary expenses, including compensation of attorneys, special deputies, assistants and others employed about the proceedings, are paid from funds of the corporation.

During 1932 the respondent was assigned for legal work relating to closed banks and was paid by the Secretary of Banking out of their funds. The Commissioner assessed the sum so received for federal income tax. The Board of Tax Appeals approved; the Circuit Court of Appeals declared the salary exempt. *Freedman v. Commissioner of Internal Revenue*, 92 F. (2d) 150.

---

What limitations does the Federal Constitution impose upon the United States in respect of taxing instrumentalities and agencies employed by a State and, conversely, how far does it inhibit the States from taxing instrumentalities and agencies utilized by the United States, are questions often considered here. *McCulloch v. Maryland* (1819), 4 Wheat. 316; *Weston v. Charleston* (1829), 2 Pet. 449; *Dobbins v. Commissioners of Erie County*, 16 Pet. 435; *Lane County v. Oregon*, 7 Wall. 71; *Veazie Bank v. Fenno*, 8 Wall. 533, 556; *South Carolina v. United States*, 199 U. S. 437, 457; *Metcalf & Eddy v. Mitchell*, 269 U. S. 514; *Indian Motocycle Co. v. United States*, 283 U. S. 570; *Burnet v. Jergins Trust*, 288 U. S. 508, 516; *Ohio v. Helvering*, 292 U. S. 360, 368; *Helvering v. Powers*, 293 U. S. 214; *Rogers v. Graves*, 299 U. S. 401; *Brush v. Commissioner*, 300 U. S. 352.

The Constitution contemplates a national government free to use its delegated powers; also state governments capable of exercising their essential reserved powers; both operate within the same territorial limits; consequently the Constitution itself, either by word or necessary inference, makes adequate provision for preventing conflict between them.

Among the inferences which derive necessarily from the Constitution are these: No State may tax appropriate means which the United States may employ for exercising their delegated powers; the United States may not tax instrumentalities which a State may employ in the discharge of her essential governmental duties—that is those duties which the framers intended each member of the Union would assume in order adequately to function under the form of government guaranteed by the Constitution.

By definition precisely to delimit "delegated powers" or "essential governmental duties" is not possible. Controversies involving these terms must be decided as they arise, upon consideration of all the relevant circumstances. Notwithstanding discordant views which have sometimes arisen because of varying emphasis given to one or another of such circumstances, it is now settled doctrine that the inferred exemption from federal taxation does not extend to every instrumentality which a State may see fit to employ. Exemption depends upon the nature of the undertaking; it is cabined by the reason which underlies the inference.

*Veazie Bank* v. *Fenno, supra,* sustained a tax laid by the Federal Government upon notes issued by state banks, notwithstanding the view entertained by two Justices that it amounted to "taxation of the powers and faculties of the state governments, which are essential to their sovereignty, and to the efficient and independ-

ent management and administration of their internal affairs."

*South Carolina* v. *United States, supra,* gave occasion for much consideration of the Federal Government's power to tax instrumentalities utilized by a State. It ruled, against a stout dissent, that although South Carolina had the right to control the sale of liquors through the dispensary system, nevertheless Congress could tax the dispensers who acted as agents of the State in making sales. "Looking, therefore, at the Constitution in the light of the conditions surrounding at the time of its adoption, it is obvious that the framers in granting full power over license taxes to the National Government meant that that power should be complete, and never thought that the States by extending their functions could practically destroy it."

*Burnet* v. *Jergins Trust, supra,* upheld a federal tax upon the receipts by the lessee of oil lands which belonged to the City of Long Beach, California. "The subject of the tax is so remote from any governmental function as to render the effect of the exaction inconsiderable as respects the activities of the city."

In *Ohio* v. *Helvering, supra,* we held that the agencies and operations of the State of Ohio in the conduct of its Department of Liquor Control were subject to excise taxes prescribed by Congress. "Whenever a State engages in a business of a private nature it exercises nongovernmental functions and the business, though conducted by the State, is not immune from the exercise of the power of taxation which the Constitution vests in the Congress."

*Helvering* v. *Powers, supra,* ruled that the compensation of members of the Board of Trustees of the Boston Elevated Railway Company was subject to the federal income tax notwithstanding they were appointed by the

Governor of the State, confirmed by the Council, and endowed with large powers to regulate and fix fares, etc. "The fact that the State has power to undertake such enterprises, and that they are undertaken for what the State conceives to be the public benefit, does not establish immunity."

The cases last referred to strikingly illustrate the outcome of efforts here to apply the recognized doctrine in respect of taxing State agencies. According to them and others of like nature due weight, we are unable to conclude that the Commissioner erred in making any one of the assessments involved in the four cases presently before us. He gave proper application to the rule which we must recognize as established. The compensation of the taxpayers was paid from corporate assets—not from funds belonging to the State. No one of them was an officer of the State in the strict sense of that term. The business about which they were employed was not one utilized by the State in the discharge of her essential governmental duties. The corporations in liquidation were private enterprises; their funds were the property of private individuals.

It follows that the judgments in Nos. 128, 129 and 597 must be reversed; the judgment in No. 287 must be affirmed.

*Nos. 128, 129, and 597, reversed.*
*No. 287 affirmed.*

Mr. Justice Cardozo and Mr. Justice Reed took no part in the consideration or decision of this case.