## HANSON v. LANDY, Collector of Internal Revenue.

District Court, D. Minnesota, Third Division. Aug. 3, 1938.

536

George W. Peterson, of St. Paul, Minn., for plaintiff.

Victor E. Anderson, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., for defendant.

BELL, District Judge.

This is an action for refundment of income taxes for the year 1935. The tax was paid under protest, application for refund made by plaintiff and denied by defendant; whereupon, this suit was commenced.

The plaintiff during the year 1935 was an Assistant Professor in the Department of Agriculture of the University of Minnesota. The defendant was the Collector of Internal Revenue for the District of Minnesota. The plaintiff's salary was paid in part by the University of Minnesota from funds received under the Act of May 8, 1914, 38 Stat. 372, 7 U.S.C.A. §§ 341–348, generally known as the Smith-Lever Act. It is this portion of the plaintiff's salary that was taxed and unless it was taxable the plaintiff would not have been required to pay an income tax.

Under Section 22(a), Revenue Act of 1934, 26 U.S.C.A. § 22(a), the term "gross income" includes compensation for personal service of whatever kind and in whatever form paid. However, the plaintiff claims immunity under Section 116(d), 26 U.S.C.A. § 116(d), providing for exclusions from gross income, as follows: "Income derived from any public utility or the exercise of any essential governmental function and accruing to any State, Territory, or the District of Columbia, or any political subdivision of a State or Territory, or income accruing to the government of any possession of the United States, or any political subdivision thereof."

The University of Minnesota is a land grant college, the government of which is vested in a Board of Regents. Long prior to 1935 it established and since continuously has maintained a Department of Agriculture in connection with which it has conducted a division of agricultural extension and home economics. It has been a beneficiary of grants under the Smith-Lever Act and similar laws designed to aid in education in agriculture. The state by action of its Legislature in 1915, Laws Minn.1915, c. 378, assented to the provisions of the Act in order to obtain the benefits conferred by it.

Plaintiff was employed and his compensation fixed by the Board of Regents and not by any officer, agent or department of the government of the United States. His salary was $3,100, of which $2,100 was paid from the grant by the United States to the University under the Smith-Lever Act.

The funds granted by the Act were transmitted by the United States to the University by check drawn on the Treasury of the United States to the University of Minnesota which was delivered to the Comptroller of the University, who endorsed the check and delivered it to the bursar of the University. The check was endorsed by the bursar and deposited in a bank to the credit of the "State of Minnesota, University of Minnesota, General Receipts Account." The treasurer of the state was also treasurer of the Regents of the University. Separate accounts were kept in the office of the treasurer and the state auditor of funds thus transmitted under the designation "University Federal Funds Account." The salary of the plaintiff, that is, the portion sought to be taxed as income, was paid out of the "General University Fund" account and this fund was reimbursed at the end of each month by a check drawn on the "University Federal Funds Account."

The plaintiff was paid his salary in accordance with the procedure and under the system of accounting and disbursing funds by the University and the State as approved by the proper officials of both. The plaintiff, as a staff member, was included in the semi-monthly payrolls of the Department of Agriculture which were submitted during the year to the Comptroller of the University, who examined them and designated the appropriations to which the various salaries were to be charged in accordance with an annual budget which had been previously approved by the Re-

gents. A salary check showing the appropriations from which the plaintiff's salary was payable, and the amount from each such appropriation, was drawn and approved by the Comptroller and transmitted with the payrolls to the state auditor who signed the check and submitted it to the state treasurer for final signature. The treasurer, after signing the check, returned it to the Comptroller of the University for delivery to the payee.

The plaintiff contends that the money paid by the United States to the State of Minnesota under the Smith-Lever Act was an outright gift to the State, that such money lost all identity as federal funds and became the absolute property of the State, and even though the plaintiff's salary in part was paid from such funds, it was in fact paid by the State or the University, an instrumentality of the State engaged in the performance of an essential governmental function, and that a tax thereon would impose a burden on the government of the State of Minnesota.

The defendant contends that the salary of the plaintiff is taxable because the funds remained earmarked as money of the United States until received by the plaintiff, that the tax imposed no burden on the state government or any instrumentality thereof, and that the activities in which the plaintiff was engaged did not constitute an essential governmental function of the state.

The question is whether the portion of the plaintiff's salary paid from federal funds is subject to income taxation by the United States. The answer depends on whether the appropriation under the Smith-Lever Act became the absolute property of the State or remained federal funds until used for the purposes designated by the Act, whether the tax imposed a burden on the state government, and whether the activities provided for in the Act are essential governmental functions of the State of Minnesota.

Our form of government is dual. The jurisdiction of the federal government is coextensive with that of the states; both operate within the same territorial limits. Certain powers, enumerated in the Constitution, are delegated to the federal government, and those not delegated are reserved to the states. The federal government must be free to exercise its delegated powers, and likewise, the states must be left untrammeled in the exercise of their reserved powers; consequently, the Constitution, by express provision or by implication, contains adequate provisions for the elimination of conflict between the two. From McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579, to the present time the courts, with variations in the numerous decisions, have held that one of these governments may not be burdened by the taxation of the other, and that an instrumentality of one, engaged in the performance of an essential governmental function, may not be taxed by the other. The immunity is reciprocal, but application of it must be within reasonable limits so as not to impair the functioning of our governmental system. In Pollock v. Farmers' Loan & Trust Company, 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759, the court refused to sanction a tax on municipal securities, but refused, in Willcuts, Collector, v. Bunn, 282 U.S. 216, 51 S.Ct. 125, 75 L.Ed. 304, 71 A.L.R. 1260, to extend the immunity to profits derived from the sale of municipal bonds by an investor. In South Carolina v. United States, 199 U.S. 437, 26 S.Ct. 110, 50 L.Ed. 261, 4 Ann. Cas. 737, and Ohio v. Helvering, 292 U.S. 360, 54 S.Ct. 725, 78 L.Ed. 1307, where the states had established dispensaries or stores for the sale of liquor, taxes could be imposed by the federal government because the activities were in the nature of private business enterprises and not within the scope of essential governmental functions. In Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384, it was held that the salary of the consulting engineer, employed by the State of Massachusetts or a local subdivision of the State, was not immune from the federal income tax where the employment was not of a permanent character and the tax did not impair in any substantial manner the ability of the state to procure his services or his ability to render them. In Indian Motocycle Company v. United States, 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277, where a motorcycle was sold by the manufacturer to a municipal corporation of a state for use in its police service, the transaction was not subject to a federal sales tax. In Helvering v. Powers, 293 U.S. 214, 55 S. Ct. 171, 79 L.Ed. 291, the salaries of trustees appointed by the State of Massachusetts to operate a street railway were subject to a federal income tax on the theory that the State "cannot withdraw sources of revenue from the federal taxing power by engaging in businesses which constitute

538

a departure from usual governmental functions and to which, by reason of their nature, the federal taxing power would normally extend." [Page 173.] In Brush v. Commissioner, 300 U.S. 352, 57 S.Ct. 495, 81 L.Ed. 691, 108 A.L.R. 1428, the court held that the salary of the chief engineer of the Bureau of Water Supply, City of New York, was immune from federal taxation because the water system conducted by the city is an essential governmental function. In Helvering v. Therrell, 303 U.S. 218, 58 S.Ct. 539, 82 L.Ed. 758, the power of the federal government was sustained to tax the compensation of a liquidator of insolvent state banks employed by the Comptroller of the State of Florida, also to tax the salary of an attorney employed in the Liquidation Bureau of the Insurance Department of New York, and also the salary of a lawyer employed by the Attorney General of Pennsylvania to serve the Secretary of Banking. Although these persons were employed by the state and paid from the state treasury, their compensation was held taxable on the ground, as stated by the court, that "The compensation of the taxpayers was paid from corporate assets—not from funds belonging to the state. No one of them was an officer of the state in the strict sense of that term. The business about which they were employed was not one utilized by the state in the discharge of her essential governmental duties. The corporations in liquidation were private enterprises; their funds were the property of private individuals." [Page 543.] In Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427, a federal income tax on salaries of employees of the Port of New York Authority, a bi-state corporation created by a compact between the states of New York and New Jersey for the purpose of performing governmental functions for the benefit of both states, was sustained on the ground that " * * * the present tax neither precludes nor threatens unreasonably to obstruct any function essential to the continued existence of the state government. So much of the burden of the tax laid upon the respondents' income as may reach the state is but a necessary incident to the coexistence within the same organized government of the two taxing sovereigns, and hence is a burden the existence of which the Constitution presupposes. The immunity, if allowed, would impose to an inadmissible extent a restriction upon the taxing power which the Constitution has granted to the federal government." [Page 977.] In Allen, Collector v. Regents of the University of Georgia, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448, the federal tax on admissions to athletic contests at the University of Georgia was sustained on the theory that "The important fact is that the State, in order to raise funds for public purposes, has embarked in a business having the incidents of similar enterprises usually prosecuted for private gain. If it be conceded that the education of its prospective citizens is an essential governmental function of Georgia, as necessary to the preservation of the State as is the maintenance of its executive, legislative, and judicial branches, it does not follow that if the State elects to provide the funds for any of these purposes by conducting a business, the application of the avails in aid of necessary governmental functions withdraws the business from the field of federal taxation." [Page 986.]

It will be observed that the decisions above mentioned are not in full accord. The principles as stated by Mr. Justice Stone in discussing the subject in the Gerhardt Case will be helpful:

"In a period marked by a constant expansion of government activities and the steady multiplication of the complexities of taxing systems, it is perhaps too much to expect that the judicial pronouncements marking the boundaries of state immunity should present a completely logical pattern. But they disclose no purposeful departure from, and indeed definitely establish, two guiding principles of limitation for holding the tax immunity of state instrumentalities to its proper function. The one, dependent upon the nature of the function being performed by the state or in its behalf, excludes from the immunity activities thought not to be essential to the preservation of state governments even though the tax be collected from the state treasury. * * * The other principle, exemplified by those cases where the tax laid upon individuals affects the state only as the burden is passed on to it by the taxpayer, forbids recognition of the immunity when the burden on the state is so speculative and uncertain that if allowed it would restrict the federal taxing power without affording any corresponding tangible protection to the state government; even though the function be thought important enough to demand immunity from a tax upon the state itself, it is not neces-

sarily protected from a tax which well may be substantially or entirely absorbed by private persons.

" * * * The taxpayers enjoy the benefits and protection of the laws of the United States. They are under a duty to support its government and are not beyond the reach of its taxing power. A nondiscriminatory tax laid on their net income, in common with that of all other members of the community, could by no reasonable probability be considered to preclude the performance of the function which New York and New Jersey have undertaken, or to obstruct it more than like private enterprises are obstructed by our taxing system. Even though, to some unascertainable extent, the tax deprives the states of the advantage of paying less than the standard rate for the services which they engage, it does not curtail any of those functions which have been thought hitherto to be essential to their continued existence as states. At most it may be said to increase somewhat the cost of the state governments because, in an interdependent economic society, the taxation of income tends to raise * * * the price of labor and materials. The effect of the immunity if allowed would be to relieve respondents of their duty of financial support to the national government, in order to secure to the state a theoretical advantage so speculative in its character and measurement as to be unsubstantial. A tax immunity devised for protection of the states as governmental entities cannot be pressed so far.

" * * * When immunity is claimed from a tax laid on private persons, it must clearly appear that the burden upon the state function is actual and substantial, not conjectural. Willcuts v. Bunn, supra, page 231, 51 S.Ct. page 129. The extent to which salaries in business or professions whose standards of compensation are otherwise fixed by competitive conditions may be affected by the immunity of state employees from income tax is to a high degree conjectural."

▊ Obviously, the test is not whether the taxpayer is employed by the state or whether his compensation is paid from the Treasury of the State or a subdivision thereof. The immunity does not apply where the function performed is not indispensable to the maintenance of the state government or where the burden on the state is so speculative and uncertain as

to restrict the federal taxing power without affording a corresponding protection to the state, or where the tax substantially may be absorbed by private persons even though the function is sufficiently important to justify immunity. According to the more recent decisions, immunity may be claimed from taxes laid on private persons employed by the state, or an instrumentality of the state, and engaged in the performance of an essential governmental function, when it clearly appears that the burden on the state would be actual and substantial and not merely conjectural.

▊ It is not necessary for the determination of this case to decide whether absolute title to the money became vested in the state when the funds were transferred from the federal to the state treasury or whether the funds were earmarked as federal money until expended for the purposes prescribed by the Act. Furthermore, it may be assumed, without deciding, that the University of Minnesota is an instrumentality of the State, that it is engaged in the performance of an essential governmental function, and that the plaintiff, in the performance of his duties as Assistant Professor of Agriculture and in meeting the requirements of the Smith-Lever Act, was performing an essential governmental function of the State; and yet, under the principles above stated, the tax on the plaintiff's salary was valid because it did not impose an actual, substantial burden on the government of the State of Minnesota.

In determining whether the action of the federal government in taxing plaintiff's salary is a burden on the State, it is proper to consider the action of the federal government in making the grant to the State. Both the federal government and the states have a common interest in the education of the people. Indeed, one of the paramount duties of the State is to educate its citizens and the cost necessarily must fall on its taxpayers. The federal government in numerous acts of Congress has undertaken to promote the welfare of the agricultural industry by the appropriation and expenditure of large sums of money. In several acts it has sought to cooperate with the states in promoting such education by appropriations expended through the states for the dissemination of education in home economics and agricultural extension work. The states have been the benefactors of such legislation. In

540

making such appropriations Congress has prescribed the purposes for which and the manner in which the money may be expended. The various acts, including the one involved, have provided that if any portion of the moneys be diminished, lost or misapplied, it shall be replaced by the state and until replaced no further appropriation shall be made or paid to the state; furthermore, they have provided for certain reports so that Congress may be advised as to whether the moneys have been expended for the purposes prescribed. Moreover, the acts may be repealed and the appropriations discontinued at the pleasure of Congress. Therefore, it is difficult to conclude that the moneys are unconditional, outright gifts to the state; so, notwithstanding the cogent argument of counsel for the plaintiff that the legal title to the money became vested in the state, the plain fact remains that the portion of the salary of the plaintiff sought to be taxed was paid by the United States. It is true that it was paid through the state, but the money came from the treasury of the federal government and not from the taxpayers of the State of Minnesota. If it had been paid direct to the plaintiff by the United States, the validity of the tax could not be doubted; and the fact that the federal government has used the state as a conduit through which to make the payment does not justify immunity from the tax.

Attention has been directed to the regulations of the Treasury Department for the enforcement of the Revenue Acts of 1916, 1921, 1922, 1924, 1925 and 1932. These regulations expressly provided that where employees of a state are paid in part or in whole from funds provided by the Smith-Lever Act or similar legislation, they are not required to include such salaries in their returns as taxable income. It is contended that from the interpretation contained in these successive regulations, followed by the enactment of the successive revenue acts without change in the interpretation, Congress must be deemed to have regarded it as correct.

The Department in 1934 reversed its interpretation of the law and by regulation held that "the compensation of officers or employees of a state or political subdivision, if paid directly or indirectly by the United States, and compensation paid by a state to officers or employees of an agricultural school or college paid wholly or in part out of grants from the United States, are taxable income." The regulations for 1936 contained a like provision.

The construction of an act containing uncertainties or ambiguities by departmental officials, charged with the administration of it, is entitled to respect. It is sometimes said that re-enactment of a statute bearing an administrative interpretation of long standing is an implied legislative approval of the construction because Congress is presumed to have acted with knowledge of such construction, National Lead Company v. United States, 252 U.S. 140, 40 S.Ct. 237, 64 L.Ed. 496.

The provision of law taxing compensation for personal service of whatever kind and in whatever form paid is clear and unambiguous. The departmental regulation exempting salaries paid from funds appropriated by the Smith-Lever Act and similar statutes prior to 1934 was contrary to the law. The Treasury Department was authorized by Congress to prescribe rules and regulations for the administration of the various revenue acts; but such rules and regulations necessarily had to be consistent with the law and if not they were a nullity. Manhattan General Equipment Company v. Commissioner, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528. The interpretation of the Treasury Department prior to 1934 was erroneous and the correction was proper. Titsworth v. Commissioner, 3 Cir., 73 F.2d 385. An erroneous construction by an administrative department is not binding on the courts. Hellmich v. Hellman, 8 Cir., 18 F.2d 239. It is not the function of the Treasury Department by regulations to impose taxes or to exempt from taxation. That power is vested in Congress and is exercised in the enactment of the revenue laws. Langstaff v. Lucas, D.C., 9 F.2d 691, affirmed 6 Cir., 13 F.2d 1022, certiorari denied 273 U.S. 721, 47 S.Ct. 111, 71 L.Ed. 858. Furthermore, legislative re-enactment of a statute will not validate an erroneous interpretation of it by an administrative official.

The tax was valid and should be sustained. Findings will be entered accordingly.