## WILLIAM B. GEERY v. MINNESOTA TAX COMMISSION AND OTHERS.[1]

December 9, 1938.

No. 31,886.

See 202 Minn. 366, 278 N. W. 594.

*William S. Ervin,* Attorney General, *John A. Pearson,* Assistant Attorney General, and *William D. Gunn,* Special Assistant Attorney General, for appellants.

*Ueland & Ueland,* for respondent.

LORING, JUSTICE.

This is the second appearance of this case in this court. For our opinion on the former appeal see 202 Minn. 366, 278 N. W. 594, to

[1]Reported in 282 N. W. 673.

which we refer for a statement of the case up to the time of the filing of that opinion. When the case went back to the district court, the plaintiff moved for the entry of judgment and the defendants for leave to answer. Defendants' motion was denied, and the plaintiff's motion was granted. Judgment was entered, and this appeal followed.

The trial court denied the defendants' motion for two reasons, the first of which was that the application came too late, and the second that the proposed answer raised no issue that had not been passed upon adversely to the defendants by the former decision of this court. It is the contention of the defendants that the trial court abused its discretion in denying their motion for leave to interpose an answer, and further that since our first opinion was rendered opinions have been handed down by the Supreme Court of the United States which indicate that that court holds views contrary to those expressed in our former opinion. Passing the question of the trial court's discretion, we take the view that no material facts were alleged which were not alleged in the complaint or taken judicial notice of by this court or that would change our views upon the legal questions involved.

The two cases relied upon by the defendants as indicating that the Supreme Court of the United States entertains views different from those expressed in our previous opinion are Helvering v. Gerhardt, 304 U. S. 405, 58 S. Ct. 969, 82 L. ed. 1427, decided May 23, 1938; and Allen v. Regents of University of Georgia, 304 U. S. 439, 58 S. Ct. 980, 82 L. ed. 1448, decided on the same day. Both of these cases involved the imposition of a federal tax. In Allen v. Regents the court held that the state, in order to raise funds for public purposes, had embarked on business having the incidents of similar enterprises usually prosecuted for private gain. It said [304 U. S. 452]:

"If it be conceded that the education of its prospective citizens is an essential governmental function of Georgia, as necessary to the preservation of the State as is the maintenance of its executive, legislative, and judicial branches, it does not follow that if the State

elects to provide funds for any of these purposes by conducting a business, the application of the avails in aid of necessary governmental functions withdraws the business from the field of federal taxation."

It does not follow from this holding that the state, without the consent of congress, may tax a federal instrumentality engaged in governmental functions. In Helvering v. Gerhardt the court sustained a federal tax upon the salaries of officers of a corporation known as the "Port of New York Authority," which was created by the legislatures of New York and New Jersey with the approval of congress for the construction and operation of bridges, tunnels, freight terminals, and for the accommodation of interstate commerce in and across New York Harbor. This case may justify an extension of the federal power to tax state salaries under certain circumstances, but it does not justify a state tax upon federal instrumentalities or the salaries of men engaged in the discharge of the sovereign functions of the United States government. The contention of the defendants that the immunity from taxation is "reciprocal" as between the state and federal government is not borne out by the authorities. By the use of the word "reciprocal" apparently the defendants mean that the extent of the immunity is the same in either case. In Helvering v. Therrell, 303 U. S. 218, 223, 58 S. Ct. 539, 542, 82 L. Ed. 758, the court said:

"The Constitution contemplates a national government free to use its delegated powers; also state governments capable of exercising their essential reserved powers; both operate within the same territorial limits; consequently the Constitution itself, either by word or necessary inference, makes adequate provision for preventing conflict between them.

"Among the inferences which derive necessarily from the Constitution are these: No State may tax appropriate means which the United States may employ for exercising their delegated powers; the United States may not tax instrumentalities which a State may employ in the discharge of her essential governmental duties—that is those duties which the framers intended each member of the

Union would assume in order adequately to function under the form of government guaranteed by the Constitution.

"By definition precisely to delimit 'delegated powers' or 'essential governmental duties' is not possible. Controversies involving these terms must be decided as they arise, upon consideration of all the relevant circumstances."

The distinction between the immunity granted to the exercise of federal delegated powers and that given to the essential governmental duties exercised by the states seems clear. It places the two cases relied upon by appellants outside the issue here involved.

The judgment of the trial court is affirmed and made final.

STONE, JUSTICE (concurring in result).

Our former opinion is for the time being the law of the case. For that reason and because I can see nothing of substance to be gained by the proposed answer, I concur in the result.

But as to the merits, I am confirmed in the view expressed when the case was first here.

Although "reciprocity of immunity" may have restrictions in favor of the federal government which cannot be invoked by a state, it remains apparent that in a large area of the field of inquiry the irresistible logic of facts works as effectively for states as for nation.

In that respect the argument supporting decision in Helvering v. Gerhardt, 304 U. S. 405, 58 S. Ct. 969, 82 L. ed. 1427, appears to me controlling. Brush v. Commr. of Int. Rev. 300 U. S. 352, 57 S. Ct. 495, 81 L. ed. 691, 108 A. L. R. 1428, was expressly limited by "what is now decided." In the opinion of Justices McReynolds and Butler the Brush case was overruled. They considered that it was "futile to attempt to distinguish" the two cases.

The Gerhardt decision was that federal taxation of officers and employes of the Port of New York Authority in respect to compensation paid them thereby was not forbidden. The reason was this [304 U. S. 424]:

"So much of the burden of the tax laid upon respondents' income as may reach the state is but a necessary incident to the co-existence within the same organized government of the two taxing sover-

eigns, and hence is a burden the existence of which the Constitution presupposes. The immunity, if allowed, would impose to an inadmissible extent a restriction upon the taxing power which the Constitution has granted to the federal government."

Why does that reasoning not apply with equal force in favor of the taxing power of a state? To me it seems inescapable that so much of the burden of a personal tax, laid upon officers and employes of a federal reserve bank, as may ultimately reach the national government, is also and just as merely "a necessary incident" to the dual sovereignty under which we live. If so, it is presupposed by the federal constitution, although the tax may have some conjectural and insignificant incidence on the federal government.

In such cases, because of the trivial character of its effect, immunity in favor of the states is denied because, and only because, its allowance would impose an inadmissible burden on the federal government's *granted* power of taxation. Equally, then, such an immunity cannot be allowed in favor of the federal government, for it would impose an inadmissible burden on the *reserved* taxing powers of the states.

Officials and employes of the federal government who are residents of a state are not by reason of their status immunized from obligation to support the state government. Generally, they have no immunity from either the property or personal taxes imposed by the state. They enjoy the protection of its laws and have access to its courts.

In similar fashion, a federal reserve bank is in much the same local status as any other corporation. A nondiscriminatory state tax, laid *in personam* against its officials and employes, can [304 U. S. 420] "by no reasonable probability be considered to preclude [or embarrass in the slightest] the performance of the function" which federal law has assigned it. Following further the reasoning of the Gerhardt case [304 U. S. 421], the burden of such a tax, so far as it reaches federal functions, is conjectural and remote rather than "actual and substantial."

Applicable as much against the federal government as that of a state is the proposition that [304 U. S. 422] "the mere fact that the economic burden of such taxes may be passed on to a state government and thus increase to some extent, here wholly conjectural, the expense of its operation, infringes no constitutional immunity."

The immunity here claimed, if allowed, will relieve officials and employes, not of the federal government, but of its mere instrumentalities and ordinary business agencies [304 U. S. 421] "of their duty of financial support" to the state governments, in order to secure to the federal government "a theoretical advantage so speculative in its character and measurement as to be unsubstantial. A tax immunity devised for protection" of the national government may not, and certainly should not, be "pressed so far."

For these reasons I repeat my submission on the merits, that there is no reason in law or fact for relieving officials and employes of a mere business agency of the federal government of any of the obligations, which are theirs because they are its citizens and residents, to support the government of the state. It is certainly not the purpose of the fundamental law of our federal system to endow any favored class of citizens with a special privilege so substantial and so detrimental to the general welfare.

GALLAGHER, CHIEF JUSTICE (concurring in result).

I agree with Mr. Justice Stone.

MR. JUSTICE PETERSON took no part in the consideration or decision of this case.