**In re KENTUCKY FUEL GAS CORPO-
RATION et al.
No. 991–B.**

District Court, E. D. Kentucky.
March 19, 1941.

[redacted]

Hubert Meredith, Atty. Gen., and H.
Appleton Federa, Asst. Atty. Gen., for
Commissioner of Revenue of Common-
wealth of Kentucky.

Robert T. Caldwell, of Ashland, Ky., for
trustee.

FORD, District Judge.

This is a proceeding originally instituted
for corporate reorganization under section
77B of the Bankruptcy Act, 11 U.S.C.A. §
207. The trustee of the debtor, Kentucky
Fuel Gas Corporation, deposited funds of
the estate in a Postal Savings Depository
of the United States, under authority of
Sec. 3 of the Act of Congress of 1933, 47
Stat. 1482, 11 U.S.C.A. § 101a. As evi-
dence of the deposits, he held United
States Postal Savings Certificates aggre-
gating $275,000 during the year 1938. The
certificates were issued by the Postmaster
General under the authority conferred by
Sec. 5 of the Postal Savings Depositaries
Act of 1910, 36 Stat. 815, 39 U.S.C.A. §
755. Sec. 16 of the Act, 39 U.S.C.A. §
766, pledges the faith of the United States
to their payment.

The trustee has filed in this proceeding
a petition for advice stating that on October
18, 1939, the Commissioner of Revenue of
the Commonwealth of Kentucky filed with
him a verified proof of claim asserting
liability of the debtor and its trustee to the
State of Kentucky for taxes assessed for
the year 1938 upon the postal savings de-
posits evidenced by the certificates so held

by the trustee, at the rate of fifty cents per one hundred dollars of value, together with the statutory penalty and interest imposed for delinquency. With his petition, he filed a copy of the proof of claim and states that he has refused to pay it on the ground that postal savings deposits are exempt from state taxation by the Constitution and laws of the United States. He prays for a ruling upon the question and for advice as to his duty in respect to it.

The Attorney General of Kentucky appeared on behalf of the State in support of the claim. The matter is submitted for adjudication upon the trustee's petition for advice.

■ That property of a debtor in the hands of an operating trustee in a proceeding of this character is subject to the same tax liability which would be applicable to that of a corporation conducting like business in the state is not disputed. 48 Stat. 993, 28 U.S.C.A. § 124a; Swarts v. Hammer, 194 U.S. 441, 24 S.Ct. 695, 48 L.Ed. 1060; Boteler v. Ingels, 308 U.S. 57, 60 S.Ct. 29, 84 L.Ed. 78; Thompson v. State of Louisiana, 8 Cir., 98 F.2d 108; Webster & Atlas National Bank of Boston v. Palmer, 2 Cir., 111 F.2d 215.

The questions giving rise to this controversy are: Does the tax sought to be laid by the State upon the intangible property of the debtor, evidenced by United States Postal Savings Certificates, constitute such a burden upon or interference with the instrumentalities or activities of the Federal Government as to be beyond the power of the State by reason of implied constitutional immunity attaching to functions of the Federal Government, and, if not, are postal savings deposits "obligations of the United States" exempted by Congress from state and other local taxation by the provisions of Section 3701 of the Revised Statutes of the United States, 31 U.S.C.A. § 742?

■■ In considering the first question, it is not material whether the purpose of the Act of 1910, 36 Stat. 814–819, 39 U.S.C.A. §§ 751–769, by which Congress established the Postal Savings System within the Post Office Department, was merely to encourage and promote habits of thrift among the people, as contended by the Attorney General or whether it was also designed as a means to facilitate the fiscal operations of the Government, as insisted by the trustee upon the authority of Farley v. Albers, 72 App.D.C. 136, 112 F.2d 401, for it is not claimed or suggested that the creation of the system was not an appropriate exercise of the constitutional powers of the Government. Whatever may have been its original or underlying purpose, its present use is as an integral part of the governmental structure and, with respect to Constitutional immunity from state or other local taxation, it stands upon a parity with all other instrumentalities of the National Government. McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579; Van Brocklin v. Tennessee, 117 U.S. 151, 6 S.Ct. 670, 29 L.Ed. 845; Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577; Federal Land Bank v. Crosland, 261 U.S. 374, 43 S.Ct. 385, 67 L.Ed. 703, 29 A.L.R. 1.

In recent years the Supreme Court has frequently had occasion to review and reconsider the historic problem of implied constitutional limitation on the power of both the State and the National Governments to tax the instrumentalities or activities of the other. James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318; Helvering v. Mountain Producers Corp., 303 U.S. 376, 58 S.Ct. 623, 82 L.Ed. 907; Helvering v. Therrell, 303 U.S. 218, 58 S.Ct. 539, 82 L.Ed. 758; Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427; and Graves v. People of State of New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466.

■ Whatever changes or modifications of views expressed in earlier opinions these later decisions reflect as to certain aspects of inter-governmental tax immunity, they indicate no departure from the traditional doctrine that the functions, activities and instrumentalities of the Federal Government are immune from all State or local taxation which, in its effect, operates to discriminate against the exercise by Congress of its constitutional powers or which adversely affects the use of the means employed to carry those powers into execution.

In Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 972, 82 L.Ed. 1427, the Court refers to the fact that the doctrine stems from McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579, and, in commenting upon the conclusions of Chief Justice Marshall in that case, said: "It was perhaps enough to have supported the conclusion that the tax was invalid, that it was aimed specifi-

cally at national banks and thus operated to discriminate against the exercise by the Congress of a national power. Such discrimination was later recognized to be in itself a sufficient ground for holding invalid any form of state taxation adversely affecting the use or enjoyment of federal instrumentalities."

In his concurring opinion in Graves v. People of State of New York ex rel. O'Keefe, 306 U.S. 466, 488, 59 S.Ct. 595, 602, 83 L.Ed. 927, 120 A.L.R. 1466, Mr. Justice Frankfurter says: "Since two governments have authority within the same territory, neither through its power to tax can be allowed to cripple the operations of the other. Therefore state and federal governments must avoid exactions which discriminate against each other or obviously interfere with one another's operations. These were the determining considerations that led the great Chief Justice to strike down the Maryland statute as an unambiguous' measure of discrimination against the use by the United States of the Bank of the United States as one of its instruments of government."

The Statutes of Kentucky (Section 4019-2, Baldwin's 1936 Revision of Carroll's Kentucky Statutes) impose an annual ad valorem tax for state purposes upon deposits in any bank, trust company or combined bank and trust company organized under the laws of the state or in any national bank of the state at the rate of ten cents on each one hundred dollars of value (one-tenth of one percent). All other tangible and intangible personal property, with a few specified exceptions not here material, is taxed at the rate of fifty cents on each one hundred dollars of value (one half of one percent). It is not claimed that postal savings deposits are embraced within the provisions of the statute fixing the low tax rate on bank deposits. The Attorney General in his brief says: "Even a cursory examination of this statute will reveal that Postal Savings Deposits cannot be brought within the provisions of these sections. . Hence Postal Savings Deposits may not be taxed at this rate. All property except that which is expressly exempted by the Kentucky Constitution or Federal law must be taxed for State purposes; and as these deposits cannot be taxed at the ten cent rate, there remains then only the fifty cent rate. Thus the Commonwealth of Kentucky must tax Postal Savings Deposits at the fifty cents per one hundred dollar

rate." Thus by applying to them the so-called "catch all" provision of the statute, the State asserts the right to tax postal savings deposits at five times the rate imposed upon deposits in banks of the state.

While the direct burden of the tax falls upon the owners of the intangible property rights evidenced by United States Postal Savings Certificates,' it can scarcely be doubted that the effect of laying a tax load upon them which is substantially heavier than that imposed upon the holders of the same type of property within the state, represented by deposits in banks, will inevitably tend to · curtail the use, cripple the growth and retard the development of the postal deposit facilities and thus injuriously affect the means employed by the Government to accomplish its purposes. See, Farmers' & Mechanics' Savings Bank v. Minnesota, 232 U.S. 516, 34 S.Ct. 354, 58 L.Ed. 706. No extraordinary gift of prophecy would seem to be required to forecast the ultimate fate of the Government's system of postal savings deposits if such discrimination against it by the states or other local taxing authorities be permissible.

The opinion of the Supreme Court in Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590, 125 A.L.R. 1383, which the state insists is authority sustaining the validity of such a variation in tax rates, even when affecting governmental agencies, deals only with the question under the due process, equal protection and privileges and immunities clauses of the Fourteenth Amendment. It has no application to or bearing upon the problem of inter-governmental taxation or the constitutional safeguards under which governmental functions are made secure from interference.

Immunity of the agencies and activities of the National Government from the effect of discriminatory state taxation is not dependent upon Congressional fiat but rests upon clearly implied constitutional sanction. We need not inquire whether postal savings deposits are embraced within the terms of section 3701 of the Revised Statutes, 31 U.S.C.A. § 742, for neither declaration of exemption by Congress nor the absence thereof would add to or detract from complete immunity existing by virtue of the necessary implications of the Constitution.

In Graves v. People of State of New York ex rel. O'Keefe, supra, it is said: "It is true that the silence of Congress,

when it has authority to speak, may sometimes give rise to an implication as to the Congressional purpose. The nature and extent of that implication depend upon the nature of the Congressional power and the effect of its exercise. But there is little scope for the application of that doctrine to the tax immunity of governmental instrumentalities. The constitutional immunity of either government from taxation by the other, where Congress is silent, has its source in an implied restriction upon the powers of the taxing government."

Obviously no decision or consideration of the question whether postal savings deposits may be constitutionally subjected to a non-discriminatory state tax is called for, since no such tax is here involved.

It follows from what has been said that the tax claim herein asserted on behalf of the State against the postal savings deposits held by the trustee is discriminatory on its face and hence should be and is adjudged unconstitutional and void. The action of the trustee in refusing to pay it is approved.