## LOHMAN et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 12356.

Circuit Court of Appeals, Eighth Circuit.

March 3, 1943.

Rehearing Denied April 1, 1943.

John T. Barker, of Kansas City, Mo. (John F. Rhodes, Robert B. Fizzell, and Justin D. Bowersock, all of Kansas City, Mo., Ira H. Lohman, of Jefferson City, Mo., and Floyd E. Jacobs, Glenn C. Weatherby, and Frank Brockus, all of Kansas City, Mo., on the brief), for petitioners.

Paul S. McMahon, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Earl C. Crouter, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals affirming the Internal Revenue Commissioner's determination of a deficiency in petitioner's income tax for the year 1936. Petitioner is one of five lawyers who represented the Insurance Department of the State of Missouri as counsel in protracted litigation with fire insurance companies. In 1936, the attorneys received compensation for their services. Believing the income thus realized exempt from federal taxation, none of the attorneys reported it. The Commissioner of Internal Revenue took the opposite view and assessed deficiencies which the Board of Tax Appeals has approved. The matter is brought before us on the petition of one of the counsel, but all of them and the Commissioner have joined in a stipulation that the proof in this case shall, so far as applicable, be controlling in the cases of the other counsel, not parties on this record. It is also stipulated that the Insurance Department of the State of Missouri is engaged in an essential governmental function and that the counsel employed by it in the litigation mentioned were not officers of the State. The question presented is whether the compensation received by the petitioner is subject to federal income tax, or is tax exempt as compensation received by a state employee, under § 116(d) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 871, and the Public Salary Tax Act of 1939, 26 U.S.C.A. Int.Rev.Code §§ 22, 116.

The Revenue Act of 1936 exempts from taxation income derived from the exercise of any essential governmental function. The administrative interpretation of the Act provides that compensation received for services rendered to the State or to any political subdivision thereof shall be included in gross income unless such compensation was received as an officer or employee of the State, or political subdivision thereof, and unless the services were rendered in connection with the exercise of an essential governmental function; and also, that persons employed by a State or a political subdivision thereof, under contract for services of a special nature, and whose work is not of a permanent or continuous character, are neither officers nor employees of the State within the meaning of the revenue act in question. See Regulations 94, Article 116-2. The validity of this administrative interpretation of the Revenue Act of 1936 is not questioned, and cannot be, in view of the holding in Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384, and in later decisions of the Supreme Court and of other federal courts. Lucas v. Howard, 280 U.S. 526, 50 S.Ct. 87, 74 L.Ed. 593; Lucas v. Reed, 281 U.S. 699, 50 S.Ct. 352, 74 L.Ed. 1125; Blair v. Byers, 8 Cir., 35 F.2d 326; Burnet v. Jones, 8 Cir., 50 F.2d 14; Burnet v. McDonough, 8 Cir., 46 F.2d 944; Pickett v. United States, 8 Cir., 100 F.2d 909; Ewart v. Commissioner, 3 Cir., 98 F.2d 649; McLoughlin v. Commissioner, 2 Cir., 89 F.2d 699; Devlin v. Commissioner, 9 Cir., 82 F.2d 731; Watson v. Commissioner, 3 Cir., 81 F.2d 626; Medalie v. Commissioner, 2 Cir., 77 F.2d 300; Coates v. United States, 2 Cir., 111 F.2d 609; La Rochelle v. Commissioner, 7 Cir., 115 F.2d 878.

Metcalf & Eddy v. Mitchell, supra, established the proposition that not all income received in the service of a state or its political subdivisions was exempt from federal income taxation, and that not every person employed in the service of a state or in the service of its political subdivisions was an employee or an officer of the state within the meaning of the federal revenue act there under consideration, exempting the salaries of state officers and employees from taxation. The rule established by that case has been applied in the cases cited above to many situations in which the courts have held that compensation received in the service of a state or its political subdivisions was subject to federal income tax, on the ground that the person receiving it was neither an officer nor an employee within the meaning of applicable federal revenue statutes. It is not always possible to draw a sharp and definite line of distinction between those who are state employees or officers and those who are not. In final analysis the decision in each case must be made upon its own facts. But, in general, the courts have held one receiving compensation for services to a State or its political subdivisions, not an officer or employee, where no oath of office was taken or required, no bond was given for the faithful discharge of the employment, where the employment was not for a definite or continuous term or for the performance of duties fixed by law, and where the services were not under the direct control of the public agency receiving them, both

as to results to be obtained and the method of obtaining them; and also where the party claiming exemption as an employee was free, while engaged in the service in question, to accept other and concurrent employment. Later cases held that one claiming exemption from federal income taxation on the ground that his income was received as a state employee or officer must show that his services to the State were in the discharge of an essential governmental function and that taxation of the income received for those services imposed a real and not merely a conjectural burden upon the exercise of that function by the State. Accordingly it was held that where the compensation of one claiming exemption on the ground stated was not paid by the State, it was subject to taxation. The immunity from federal taxation of compensation received in the service of the State, being implied for the protection of the State, was held to be narrowly limited. Helvering v. Therrell, 303 U. S. 218, 58 S.Ct. 539, 82 L.Ed. 758; Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427.

■ The doctrine of exemption from federal income taxation of salaries of officers and employees of States and their political subdivisions was based upon a supposed immunity of such salaries from taxation under the Federal Constitution. The decisions in Helvering v. Therrell, supra; Helvering v. Gerhardt, supra; and Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466, marked the end of this constitutional interpretation. The Graves case was decided on March 27, 1939. On April 12, 1939, Congress passed the Public Salary Tax Act, relied on by petitioner here, 26 U.S.C.A. Int.Rev.Code § 22. In conformity with the Graves case, the Act subjected to federal income taxation, compensation received by officers and employees of states and their political subdivisions. But it contained a provision to relieve those state officers and employees from a retroactive application of its provisions as to income received by them as such state officers and employees prior to 1938, in all cases in which, under the law as it stood before the decision of the Graves case, their compensation as such had been immune from taxation under constitutional interpretations then prevailing. But the Act went no further. It did not broaden the prior existing immunity, nor extend immunity from federal income taxation to compensation received from states and their political subdivisions which formerly had been held subject to federal taxation. The Act did not create an immunity from federal taxation, but merely protected one which had existed under abandoned interpretations of the law. Coates v. United States, supra; Meigs v. United States, 1 Cir., 115 F.2d 13; La Rochelle v. Commissioner, supra.

The Board was of the opinion that under the evidence in the case the petitioner was not an employee of the State. It found that petitioner's employment was special and not general, and that the petitioner was not paid from state funds. Accordingly, it sustained the Commissioner's determination of a deficiency in petitioner's income tax. The taxpayer contends that his employment was distinguishable from that held subject to federal income taxation prior to the decision in the Graves case and other cases mentioned, and that since his compensation from the State was received prior to 1938, it is still exempt from taxation under the provisions of the Public Salary Tax Act of 1939. We cannot agree.

The record discloses that in 1930, fire insurance companies doing business in Missouri announced a substantial increase in the rates and premiums charged by them for insurance written for policy holders within the State. The proposed increase was disapproved by the State Insurance Department. As a result of the ensuing dispute as to the legality of the proposed rates, a number of insurance companies instituted suits in the state and federal courts in Missouri to enjoin the interference by state officials with the collection of the increased premium rates. In this litigation an arrangement was reached by which the excess of the rates proposed by the insurance companies, over those approved by the state officials, was impounded in the hands of the courts as collected from the policyholders, pending the termination of the litigation. The amount of money so impounded was large, eventually approximating $10,000,000 in the federal courts and nearly $2,000,000 in the state courts. Missouri, in order to protect its interests and the rights of policyholders in this important litigation, employed petitioner and other counsel to rep-

resent the State and its policyholders in the litigation.

By § 5788 of the Revised Statutes of Missouri, 1939, Mo.R.S.A. § 5788, the Superintendent of Insurance is authorized, with the approval of the Governor, to employ counsel "for the purpose of enforcing the insurance laws." Under the authority of this statute the Superintendent of Insurance, with the required approval of the Governor, appointed petitioner as one of the counsel for the insurance department. Following his appointment petitioner entered into a written contract with the Superintendent of Insurance and the Attorney General of the State, which may be summarized as follows. After reciting that the petitioner had been designated by the Attorney General and the Superintendent of Insurance "as special counsel to act for and in their behalf" in the insurance litigation, the agreement provided that the state officers mentioned bound themselves and their successors in office, so far as they were legally able to do so, on the point of compensation for petitioner for the services to be rendered by him as special counsel in the litigation described. It further provided that the petitioner should be paid for his services out of appropriations made by the general assembly of the State, as the parties may from time to time agree, and that, on the conclusion of the litigation, payment for petitioner's services should be made by allowance of court out of any funds resting in the hands of the court as a result of such litigation; that payment from time to time to petitioner out of money appropriated by the general assembly should in no wise be construed as a limitation upon the right of petitioner to be paid out of any funds under the supervision of the court; that if at the conclusion of the litigation no funds remained in the hands of the court from which petitioner could be compensated, the state officials and their successors in office would urge upon the legislature the appropriation of moneys sufficient to compensate petitioner for his services. All other counsel employed by the State in the litigation received the same appointment and executed the same agreement concerning their compensation.

Following his appointment the petitioner devoted from seventy-five to ninety percent of his time to the insurance litigation, but during all of the time while he was so engaged, he continued to maintain an office for the general practice of law, and he engaged in such practice when the opportunity afforded. He did not take an oath of office nor give a bond for the faithful discharge of the duties of his employment. There is evidence that on occasion he was consulted by the Superintendent of Insurance upon other matters which, strictly speaking, were not a part of the insurance litigation, but arose because of it. He was required to give to the litigation such time as its successful prosecution demanded, or as the officials of the State required, but he was at liberty, as stated above, to engage in such other professional work as he was able to secure. The work which he did under his appointment was done in petitioner's office and in the offices of associate counsel, and from time to time he was present in the office of the Superintendent of Insurance at consultations and at conferences with the Governor, the Superintendent of Insurance and with the Attorney General, and was engaged at various points throughout the United States in company with associate counsel, taking testimony in support of the State's contentions. The expenses incurred by him by reason of his employment were paid by the State upon approval of his expense accounts. His appointment was not for a specified term.

What we have just said concerning petitioner applies equally to his associate counsel in the case with the possible exception of one of them, G. C. Weatherby, who resigned his position as Assistant Attorney General in order to engage in the litigation. During the greater part of his employment Mr. Weatherby's office was in the office of the Superintendent of Insurance, who felt at liberty to consult him upon any matters which arose in connection with the work of that department. From time to time the petitioner and all of his associates received payments from the Superintendent of Insurance on account of their services, which payments were made from funds appropriated by the legislature for the expenses of the State Insurance Department. These payments are not involved here.

Petitioner and one of his associates received their appointments and executed the contract concerning compensation in 1930. Following a change in state administration they were discharged in 1933. After re-

ceiving notice of their discharge they were not called upon again by state officials for services in connection with the insurance cases, but on request of their associates, who continued the insurance litigation, they gave them advice and assistance and participated in consultations with them. In 1935 counsel remaining in the service of the State were advised that the litigation with the insurance companies had been settled by the State Insurance Superintendent then in office. Neither petitioner nor any of his associates was consulted as to the terms of this settlement and knew nothing of it until it was made. Those still in the service of the State prepared the necessary stipulations, pleadings, and court orders for putting the settlement into effect. As a part of the settlement, one of the counsel, as trustee for himself and associates, received $500,000 which was distributed among all of the attorneys, without consultation with or direction by any state official.

Petitioner and his associates insist that their work was done under the constant and complete control of the Superintendent of Insurance, that they were subject to his supervision and direction in all the details of their work, and that they were employed generally to enforce the insurance laws of Missouri and not merely as special counsel in the insurance litigation. These contentions, however, are not confirmed by either of the persons who held the office of Superintendent of Insurance during the time of their employment. On the contrary, these officials testified that while they insisted upon being informed as to the progress of the litigation and denied to counsel the power to make or to negotiate a settlement of it, they did not presume to dictate to lawyers of the ability of petitioner and his associates concerning the prosecution of the case in the courts, nor to instruct them in the details of their work in the case. They insisted upon the protection of the State's interests in accordance with their ideas of what those interests were, but they relied upon the professional skill of petitioner and his associates for the accomplishment of the desired results. Moreover, the contract concerning compensation, which all of the attorneys signed, refers to them as special counsel in the litigation in question. Practically all of their time was devoted to that litigation. The Superintendent of Insurance who employed all but one of the counsel testified that the attorneys were employed because of the suits filed by the insurance companies and as special counsel in those cases. Indeed, the record fails to show any other justification for their employment by the State Insurance Department.

There is also disagreement between the Superintendent of Insurance who made the settlement with the insurance companies and the counsel as to the exact terms of that settlement. Petitioner and all of his associates agreed that the settlement was made by the Superintendent of Insurance without consultation with them and without their knowledge of, or consent to, any of its terms. Petitioner and his associates do not agree exactly upon the terms of the settlement. One of the state's counsel testified that he never saw the agreement of settlement, but that he understood that from the funds impounded in court the insurance companies received $800,000, out of which they agreed to pay expenses of the State incurred in the litigation and the compensation of its counsel. Mr. Weatherby, whose contact with the Superintendent of Insurance who made the settlement was closer than that of other counsel, testified that by the agreement of settlement, the state's policyholders received twenty per cent of the funds impounded in court, the insurance companies eighty per cent, and that the insurance companies agreed to pay to the State its expenses and to pay the compensation of its attorneys. He said that the companies agreed to reimburse the State for its expenses incurred in the litigation and to pay the counsel and that counsel were paid out of funds received by the insurance companies from money impounded in court. Another, whose connection as counsel continued throughout the litigation, testified that the Superintendent of Insurance making the settlement recognized that the services of the lawyers were worth $500,000 and offered to pay $500 to counsel for a release from this obligation of the State. This payment was made. He did not know where the $500,000 came from, but he assumed that it was a part of the funds received by the insurance companies on the settlement. His understanding of the agreement was that the insurance companies admitted that the State owed its lawyers $500,000 and agreed to pay this sum to the State, which in turn agreed to pay it to the attorneys.

The payments to counsel, however, were made by the delivery to them of checks drawn by the insurance companies payable to one of the attorneys as trustee for himself and his associates. On the other hand, the Superintendent of Insurance in office at the time of the settlement testified that the agreement of settlement provided that the Superintendent of Insurance should receive twenty per cent of the funds impounded in the court for distribution to the state policyholders, that the insurance companies should receive eighty per cent, and that the counsel were to be paid out of the money that went to the insurance companies.

In this state of the evidence we are unable to say that the Board of Tax Appeals was wrong in sustaining the deficiency assessed by the Commissioner against the petitioner. We are not at liberty to set aside the finding of the Board of Tax Appeals upon a question of fact supported by substantial evidence. Blair v. Byers, supra; Helvering, Commissioner v. Washburn, 8 Cir., 99 F.2d 478; Consoer, Older & Quinlan v. Commissioner, 7 Cir., 85 F.2d 461; Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343. And in so far as the Board's findings involve mixed questions of law and fact, we cannot say that they are erroneous. Helvering v. Rankin, supra.

The circumstance that the appointments, which petitioner and his associates received, recited that counsel were appointed to enforce the insurance laws of the State, does not make their employment by the State a general one. A special appointment is as consistent with the terms of the Act authorizing petitioner's appointment and with the wording of the appointment. The fact that the state act under which they were appointed refers to appointees of the Superintendent of Insurance as employees is not controlling. Meigs v. United States, supra, 115 F.2d at page 17. The idea of a general appointment to enforce the insurance laws of the State is directly opposed by the contract regarding compensation into which petitioner entered, which refers to him as special counsel employed in the insurance litigation. A contract between an officer or employee of a State and a department of the State regarding his compensation is not consistent with the meaning of the word "employee" as used in the federal revenue acts. The compensation, as well as the duties and the term of employment of such an employee, is usually fixed by law and is not left to negotiations between the employee and the state department which employs him. It may also be noted, as was done in the case of La Rochelle v. Commissioner, supra, that petitioner's compensation for the services rendered was disproportionate to the general conception of the salary of a state employee. The fact that petitioner devoted by far the greater part of his time to the services of the State is not controlling, since it is undisputed that petitioner had the right to engage and did engage in concurrent professional employment.

Nor can we say that the Board's finding that petitioner was not in fact paid by the State out of funds appropriated by the State is without support in the record. The contract concerning compensation which petitioner executed justifies the conclusion that at the time of his employment the petitioner, as well as the Superintendent of Insurance and the State's Attorney General, expected that petitioner would receive compensation from funds impounded in court. It is admitted that petitioner was in fact compensated from these impounded funds, which were never the property of the State of Missouri, but belonged either to the policy holders or to the insurance companies. Payment was made direct to the State's counsel by check drawn by the insurance companies. If, as petitioner contends, the insurance companies paid to the State of Missouri, or agreed to pay to the State of Missouri, as a part of the settlement of the litigation, the amount for which the State itself was liable to counsel, and the State, having received the sum of money in question, paid it to petitioner and his associates, or directed the insurance companies to pay it directly to them, petitioner's contentions might not be without weight. But the most that can be said of the evidence upon this question is that it was in sharp conflict and the Board was well within its rights in finding against petitioner.

Petitioner argues that his status as an employee of the State has been declared by the Supreme Court of Missouri in several decisions, some of which arose out of the very litigation in which petitioner was employed. Petitioner contends that under Erie Ry. Co. v. Tompkins, 304

984

U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the decisions of the Supreme Court of Missouri are controlling here. The cases relied on are: Aetna Insurance Co. v. O'Malley, 343 Mo. 1232, 124 S.W.2d 1164; State ex rel. Carwood Realty Co. v. Dinwiddie, 343 Mo. 592, 122 S.W.2d 912; Lucas v. Lamb, 348 Mo. 900, 156 S.W.2d 634; State ex rel. Lucas v. Blair, 346 Mo. 1017, 144 S.W.2d 106. We have considered these cases, but it is enough to say of them that they have no bearing upon the question for decision here. It is not important that petitioner and his associates may have been employees in the sense in which that word is used in the statute of Missouri under which they received their appointments. We are concerned here with the meaning of employee as used in the context of the applicable federal acts and valid administrative interpretations of them. On that question the state decisions are not controlling.

■ In view of the stipulation joined in by petitioner's associate counsel to the effect that the present record, so far as applicable, shall control the determination of the validity of the deficiencies assessed against them by the Commissioner and approved by the Board, we think it proper to add that we find nothing in the record before us which distinguishes the character of the employment of any of them from the others except in the case of G. C. Weatherby. The attorney mentioned, under the evidence before us, gave all of his time to the services of the State. He resigned his position as Assistant Attorney General to take a position in the office of the Superintendent of Insurance in the character of supervising counsel for the State in the insurance litigation. He did not maintain a separate office or accept or engage in concurrent professional employment. But he received the same appointment as did his associates and executed the same contract regarding his compensation. He was compensated in the same manner and from the same funds as were the other counsel. According to the Superintendent of Insurance who employed him, he was willing to take "pot luck" with the other counsel. In our opinion the exemption of his salary from the federal income tax determined against him by the Commissioner is not warranted by the evidence before us.

The decision of the Board of Tax Appeals is in all respects affirmed.