JAMES F. CURTIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 85567, 91589. Promulgated February 9, 1939.

*Norborne P. Gatling, Jr., Esq.,* for the petitioner.
*James C. Maddox, Esq.,* for the respondent.

OPINION.

SMITH: These proceedings are for the redetermination of deficiencies in petitioner's income tax as follows:

| Docket No. | Year | Deficiency |
|---|---|---|
| 85567 | 1932 | $1,426.67 |
| Do | 1934 | 9,393.47 |
| 91539 | 1935 | 5,343.78 |

The issues presented are (1) the amount of the personal exemption and credit for dependents to which the petitioner is entitled for the years 1932 and 1934; (2) whether the petitioner is entitled to a bad debt deduction of $60,000 in each of the years 1932 and 1934 because of the worthlessness in part, or in whole, of a debt owing to him by the Mercurt Co. for moneys advanced to the corporation; (3) whether petitioner is entitled to a loss deduction in 1935 of $1,200 representing the cost of a share of the capital stock of Engineers' Land Corporation which he ascertained to be worthless in that year; and (4) whether the fees received by the petitioner for services as a notary public in 1932, 1934, and 1935 are includable in his gross income for those years for Federal income tax purposes. The several issues will be disposed of in their numerical order.

*Issue 1.*—During 1932 and 1934 the petitioner was married and living with his wife, Laura M. Curtis. During 1932 he had three dependent children under 18 years of age who received their chief support from him and during 1934 he had two such dependents.

Petitioner and his wife filed separate income tax returns for 1932. In her return for that year the wife claimed the full amount of the personal exemption, $2,500, and credit for dependents, $1,200, allowable to the marital community. Her return showed an ordinary net income of $1,241.93. Petitioner's return for that year showed no net income and no claimed personal exemption or credit for dependents. No such exemption or credit was allowed the petitioner in respondent's deficiency notice for 1932.

As respondent points out in his brief, the question of the amount of the personal exemption and credit for dependents to which the petitioner may be entitled for 1932 becomes moot for the reason that it is now conceded that petitioner is entitled to a loss deduction of $60,000 for 1932 which wipes out his net income for that year. We therefore pass the question.

In the deficiency notice for the year 1934 respondent allowed the petitioner a personal exemption of $2,500 and credit for three dependents in the amount of $1,200. By amended answer the respondent affirmatively alleges that the amount allowable to the petitioner

in 1934 for personal exemption and credit for dependents was only $3,300, the petitioner having but two dependent children under 18 years of age during that year, and asks that petitioner's taxable income for 1934 be redetermined accordingly, and that the deficiency for 1934 be increased. For 1934 the petitioner was entitled to a personal exemption of $2,500 and to a credit for dependents of $800. Recomputation will be made under Rule 50.

*Issue 2.*—In September 1925 petitioner and his brother-in-law, William H. Merriam, organized a corporation known as "Mercurt Co., Inc.," to engage in the real estate business in Nassau County, New York. They each subscribed for five shares of capital stock at $20 per share which was all the stock that was issued. It was agreed that petitioner would furnish the necessary capital for the company's business operations in the form of loans or advances and that Merriam would manage the business. Petitioner served as president and Merriam was vice president.

The corporation engaged in a number of transactions in real estate in Nassau County, both as broker and on its own account. Over the period 1925 to 1932, inclusive, the petitioner made loans to or advances to the corporation on open account of about $250,000 for the purpose of acquiring real estate and paying taxes and carrying charges thereon and paying the operating expenses of the business. Most of these advances were made to the corporation prior to January 1, 1932. Those made after that date were principally for taxes, mortgage interest, and like purposes. The corporation gave the petitioner its promissory note for approximately $75,000 representing loans made early in 1932. Thereafter, the petitioner advanced funds to the corporation on open account.

Only a small portion of petitioner's loans or advances to the corporation were ever repaid. On December 31, 1932, there was a balance due the petitioner on the books of the corporation of about $190,000. The corporation's only asset of any substantial value at that time was a tract of undeveloped land of approximately 46 acres located at Manhasset, Nassau County, New York. This property had been acquired by the corporation at a cost of approximately $232,500. It was encumbered by mortgages on December 31, 1932, of approximately $124,000. There were unpaid interest on the mortgages of $3,720 and unpaid taxes on the property of $2,586.51. The fair market value of the property at that time was about $3,500 per acre, or $162,750 for the whole tract.

From 1930 until November 1933 repeated efforts were made by the corporation and the petitioner to sell the property, but they were unsuccessful. Foreclosure proceedings were begun by the mortgagee in September 1933. On November 24, 1933, the corporation by agree-

ment with the mortgagee deeded the property to a third party for a consideration of $7,500 cash and a release from further obligation on the mortgages. The $7,500 cash was then turned over to the petitioner by the corporation.

At the close of 1933 the corporation had ceased to do business and had no tangible assets except a small amount of cash—less than $50—and office supplies of no substantial value. The corporation was finally dissolved in August 1934.

In his income tax return for 1932 the petitioner charged off as worthless $60,000 of the corporation's indebtedness to him. As stated above, the respondent now concedes that "the amount of $60,000 deducted as a partial bad debt on the return for the year 1932 was proper and is sustained by the evidence of record in this appeal." With this deduction the petitioner had no net income for 1932.

In his 1933 income tax return petitioner charged off an additional $50,000 of the corporation's indebtedness to him. The year 1933 is not involved in these proceedings, so that the correctness of the charge-off in that year is not in controversy. It appears, however, that the respondent has ruled that the entire indebtedness was deductible as worthless in the year 1933. In his 1934 return the petitioner charged off an additional $60,000 of indebtedness which the respondent has disallowed in his deficiency notice and which is here in controversy.

The evidence shows quite plainly, we think, that the debt became totally worthless in 1933. During that year the corporation disposed of its only asset of any value, the tract of real estate referred to above, and ceased its business activities. The respondent correctly disallowed the deduction of any part of the indebtedness in 1934.

*Issue 3.*—During 1928 petitioner became a member of the "Engineers' Golf Club" situated near his home at Roslyn, New York. In addition to the regular initiation fees and dues, and as a prerequisite to membership in the club, petitioner purchased for $1,200 one share of the capital stock of the Engineers' Land Corporation. This corporation owned the land on which the golf course was situated and leased it to the golf club. The petitioner resigned from the club some time in 1931, 1932, or 1933 and attempted to surrender his share of stock in the Engineers' Land Corporation and receive back its cost. He was not permitted to do this, however. Some time in 1932 the Engineers' Land Corporation went into receivership under foreclosure proceedings brought by the mortgagee. The petitioner ascertained some time in 1935 that the stockholders would probably not recover anything from the receivership and deducted the cost of his share of stock, $1,200, in his income tax return for that year. The deduction was disallowed by the respondent in his deficiency notice "as representing a personal expense."

· Even assuming that petitioner's purchase of the share of stock of the Engineers' Land Corporation was a transaction entered into for profit, which the evidence in no wise indicates (cf. *Samuel Riker, Jr., Executor*, 6 B. T. A. 890), the deduction of the cost of the stock in 1935 would have to be disallowed for the reason that there is no showing of any identifiable event fixing the loss as one of that year. An investment for profit in the stock of a corporation is deductible in the year in which the stock becomes worthless. *De Loss* v. *Commissioner*, 28 Fed. (2d) 803; *Claude D. Cass*, 32 B. T. A. 713; affd., 83 Fed. (2d) 841; *Sol H. Goldberg*, 36 B. T. A. 44. For all that the evidence of record shows the stock of the Engineers' Land Corporation became worthless in 1932 when the foreclosure proceedings were begun or in one of the two succeeding years when the fact of and the extent of its insolvency must have been known or ascertainable. On the evidence before us the loss is not deductible in 1935.

*Issue 4.*—This issue is submitted on stipulated facts and presents a single question of law, namely, whether the notarial fees received by the petitioner in 1932, 1934, and 1935 are exempt from Federal income tax by reason of constitutional immunity.

During the years 1932 to 1935, inclusive, the petitioner was a duly qualified and acting notary public in and for the Counties of Nassau and New York, State of New York. In his capacity as notary public petitioner during 1932, 1934, and 1935 protested, or caused to be protested, numerous unpaid checks, notes, drafts, and other negotiable instruments, for which he received fees of $26,574.20 in 1932, $22,643.42 in 1934, and $18,414.70 in 1935. In his income tax returns for those years petitioner reported the amounts so received but excluded them from taxable income on the ground that they were exempt from Federal taxation under the Constitution of the United States.

The respondent contends that the fees received by the petitioner for services as notary public are not within the constitutional exemption.

Notaries public in the State of New York are appointed by the secretary of state for a term of two years. They are required to take an oath of office. Their powers and duties are prescribed by statute and are in part as follows:

§ 101. *Appointment and number of notaries public.* The secretary of state shall appoint such number of notaries public in and for the several counties of the state as may be necessary, and of such number he is authorized to appoint at least one notary public for each bank applying therefor. The appointment of a notary public whose appointment takes effect on the thirty-first day of March shall be for a term of two years, expiring on the thirtieth day of March. * * *

\*　　\*　　\*　　\*　　\*　　\*　　\*

§ 105. *Powers and duties of notary public.* A notary public has authority:

1. Anywhere within the state to demand acceptance and payment of foreign and inland bills of exchange, and of promissory notes, and may protest for the nonacceptance or nonpayment thereof, to exercise such powers and duties as by the law of nations and according to commercial usage, or by the laws of any other government, state or country, may be performed by notaries.

2. In the county in and for which he shall have been appointed and elsewhere, as provided in section one hundred and two of this chapter, to administer oaths and affirmations, to take affidavits and certify the acknowledgment or proof of deeds and other written instruments to be read in evidence or recorded in this state, in all cases in which commissioners of deeds may now take and certify the same, and under the same rules, regulations and requirements prescribed to said last-mentioned officers, not inconsistent with any of the provisions of this chapter; * * * [Art. 10, book 18, McKinney's Consolidated Laws of New York, Annotated].

Neither the Revenue Act of 1932 nor the Act of 1934 contains any specific provision for the exemption of the compensation received by officers or employees of a state or political subdivision thereof, such as appears in section 1211 of the 1926 Act applicable to 1924 and prior years. However, the Commissioner has ruled in Regulations 77, promulgated under the 1932 Act, article 643, that:

Compensation paid to its officers and employees by a State or political subdivision thereof for services rendered in connection with the exercise of an essential governmental function of the State or political subdivision, including fees received by notaries public commissioned by States, is not taxable. * * *

Article 116–2 of Regulations 86, promulgated under the 1934 Act, contains the following provision:

* * * Compensation received for services rendered to a State or a political subdivision thereof is to be included in gross income unless (a) the person receives such compensation from the State or political subdivision as an officer or employee thereof, and (b) the services are rendered in connection with the exercise of an essential governmental function. The commissions of receivers appointed by State courts and the fees received by notaries public are taxable.

Neither the Board nor any of the Federal courts, so far as we have been able to ascertain, has passed upon the question of the taxability by the Federal Government of the fees received by a notary public serving under state appointment.

Assuming that the petitioner as notary public was an officer of the State of New York, within the meaning of that term as defined in *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, the question remains whether the tax which the Federal Government undertakes to levy upon the emoluments of his office would impose a constitutionally forbidden burden upon the state government.

This question in substantially the same form as here presented has been under consideration by the Supreme Court in a number of recent cases including *Helvering* v. *Gerhardt*, 304 U. S. 405; *Helvering* v. *Therrell; Helvering* v. *Tunnicliffe; McLoughlin* v. *Commissioner*, and

*Helvering* v. *Freedman*, 303 U. S. 218. It was held in the *Gerhardt* case that the employees of the Port of New York Authority were not exempt from income tax on the salaries which they received for such services. It was held in the *Therrell*, *Tunnicliffe*, and *Freedman* cases that the immunity from Federal income tax did not extend to the compensation received by attorneys for services in liquidating insolvent state banks, and in the *McLoughlin* case that the compensation received by an attorney for services in liquidating insurance companies in the State of New York was not exempt. In the *Gerhardt* case the Court said that there were two guiding principles of limitation for holding the tax immunity of state instrumentalities to its proper function:

* * * The one, dependent upon the nature of the function being performed by the state or in its behalf, excludes from the immunity activities thought not to be essential to the preservation of state governments even though the tax be collected from the state treasury. * * * The other principle, exemplified by those cases where the tax laid upon individuals affects the state only as the burden is passed on to it by the taxpayer, forbids recognition of the immunity when the burden on the state is so speculative and uncertain that if allowed it would restrict the federal taxing power without affording any corresponding tangible protection to the state government; even though the function be thought important enough to demand immunity from a tax upon the state itself, it is not necessarily protected from a tax which well may be substantially or entirely absorbed by private persons. *Metcalf & Eddy* v. *Mitchell*, *supra*; *Willcuts* v. *Bunn*, 282 U. S. 216.

*        *        *        *        *        *        *

* * * When immunity is claimed from a tax laid on private persons, it must clearly appear that the burden upon the state function is actual and substantial, not conjectural. *Willcuts* v. *Bunn*, *supra*, 231. * * *

* * * The state and national governments must co-exist. Each must be supported by taxation of those who are citizens of both. The mere fact that the economic burden of such taxes may be passed on to a state government and thus increase to some extent, here wholly conjectural, the expense of its operation, infringes no constitutional immunity. Such burdens are but normal incidents of the organization within the same territory of two governments, each possessed of the taxing power.

In the instant case it does not appear that the imposition of the tax on the income of the taxpayer would result in any "actual and substantial" burden on the functions of the state government. All of the compensation received by the taxpayer for his services as notary public was in the form of fees collected from those for whom he performed the services. The State of New York contributed none of the funds. No attempt has been made to show that the tax sought to be levied would add any financial burden upon the state or in any way hinder its functions of government.

Granting that the duties of a notary public in the State of New York are of such a nature as to stamp them essentially governmental in character, it still does not follow, as we read the court's

opinion in the *Gerhardt* case, that by reason of that fact alone the compensation received by an individual for his services in performing such duties is exempt from Federal income tax. For, as was said in the *Gerhardt* case, "even though the function be thought important enough to demand immunity from a tax upon the state itself, it is not necessarily protected from a tax which well may be substantially or entirely absorbed by private persons." Following the *Gerhardt* case the Circuit Court of Appeals for the Second Circuit held, in *Saxe* v. *Shea*, 98 Fed. (2d) 83, that the compensation received by an attorney for services as referee or special guardian in certain cases, under appointment by the Supreme Court of New York and the Surrogate's Court of New York County, was not within the constitutional immunity. Quoting from the Supreme Court's opinion in the *Gerhardt* case, including the excerpt above, the court said:

* * * The tax upon such compensation will be absorbed by the taxpayer without effect upon the state, as fully as the tax upon that part of his income arising from his professional employment as an attorney at law. In the light of the *Gerhardt* opinion we believe that the source of the appellant's compensation is alone to defeat his claim of constitutional immunity from federal income taxes, although prior to that decision the lower courts had expressed divergent views on this question. * * *

We think that the cases cited above, particularly the *Gerhardt* case, are controlling in the instant case, and that they declare a rule which places the notarial fees received by this petitioner beyond the limitation of the immunity from Federal income tax.

Reviewed by the Board.

*Judgments will be entered under Rule 50.*