JOHN T. ROWLAND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 85332, 88435. Promulgated June 6, 1939.

*Robert Carey, Esq.*, for the petitioner.
*Benjamin M. Brodsky, Esq.*, for the respondent.

OPINION.

SMITH: In the light of the opinions of the United States Supreme Court in *Helvering* v. *Gerhart*, 304 U. S. 405, and *Graves* v. *New York ex rel. O'Keefe*, 306 U. S. 466, there can be no question but that the petitioner's compensation received from the city of Jersey City, New Jersey, as supervising architect, is subject to tax, although the petitioner may be relieved from the burden of the tax by the Public Salary Tax Act of 1939, approved April 12, 1939. That act provides for the abatement, credit, or refund of the income tax assessed or collected from officers and employees of a state or political subdivision thereof for years prior to 1938 in certain cases. The relief granted, however, applies only to "compensation for personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing." (Title II, § 201.) The question for consideration by the Board at the present time is therefore whether the petitioner was an "officer or employee" within the meaning of that act.

In the report of the Senate Finance Committee on the Public Salary Tax Act it is stated:

Title II [Public Salary Tax Act of 1939] applies only to State and local officers and employees and not to other persons having dealings with State and local governments, since the taxability of the compensation of such other persons has long been recognized. Such persons are generally held to be independent contractors for purposes of Federal income taxation. Their liability for such tax has been clearly established since the case of *Metcalf & Eddy* v. *Mitchell* (1926) 269 U. S. 514, and they are not officers and employees within the meaning of this bill.

In *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, it is stated as follows:

An office is a public station conferred by the appointment of government. The term embraces the idea of tenure, duration, emolument and duties fixed by law. Where an office is created, the law usually fixes its incidents, including its term, its duties and its compensation. * * * The term "officer" is one inseparably connected with an office; but there was no office of sewage or water supply expert or sanitary engineer, to which either of the plaintiffs was appointed. The contracts with them, although entered into by authority of law and prescribing their duties, could not operate to create an office or give to plaintiffs the status of officers. * * * There were lacking in each instance the essential elements of a public station, permanent in character, created by law, whose incidents and duties were prescribed by law. * * *

In 1900, just prior to the petitioner's designation as supervising architect, an amendment was made to the school laws of New Jersey as they then existed, reading as follows:

Hereafter Boards of Education in cities of the first class shall have power and authority by the vote of a majority of its members, to appoint its superintendents of erection and repairs for said Board, prescribe their duties, determine their compensation and fix their terms of office, not to exceed five years, and by a like vote may remove them during their term for cause.

In the revision of 1903, see Compiled Statutes, 1910, page 4741, section 50, is the following paragraph:

Every such board shall have the supervision, control and management of the public schools and public school property in its district, and shall keep such property insured. It shall appoint a person to be its secretary, and may appoint a superintendent of schools, a business manager and other officers, agents and employees as may be needed, and may fix their compensation and terms of employment, but no such appointee, officer, agent or employee, other than the secretary, shall be a member of said board. [P. L. 1903 (2d. sp. sess.) p. 21.]

There has just been completed a complete new revision of the school law of the State of New Jersey, known as Title #18, chapter 6, section 18, of the Revised Statutes of 1937. The pertinent provisions of the revision of 1937 read:

The board shall have the supervision, control, and management of the public schools and public school property in its district, and shall keep such property insured. [Rev. of 1937–18: 6–18.]

The board shall appoint a person to be its secretary, and may appoint a superintendent of schools, a business manager, and other officers, agents, and

employees as may be needed, and may fix their compensation and terms of employment, but no such appointee, officer, agent, or employee, other than the secretary, shall be a member of the board. [Rev. of 1937, 18 : 6–27.]

The office of "business manager" which the Court of Errors and Appeals of New Jersey has found synonymous with the title "supervising architect" in Jersey City, is defined pretty generally in sections 70, 71, and 72 of the Compiled Statutes of 1910, beginning at page 4745. The sections applicable read as follows:

§ 70. Whenever a business manager shall be appointed it shall be by a majority vote of all the members of the board of education.

He shall receive such salary as said board shall determine. He shall, before entering upon the duties of his office, execute and deliver to the board of education a bond in a sum to be fixed by said board, but not less than two thousand dollars, with surety or sureties to be approved by said board, conditioned for the faithful performance of the duties of his office. Said board may accept the bond or undertaking of a trust company, surety or indemnity company and may pay the annual premium or fee therefor as a current expense of said board. Said business manager may, by a majority vote of all the members of the board of education, be removed from office. He shall have a seat in said board, and the right to speak on all matters relating to his department, but shall not have the right to vote. [P. L. 1903 (2d sp. sess.) p. 25.]

71. The business manager shall have charge and care of the public school buildings, and all other property belonging to the school district. He may appoint and remove clerks in his office, but the number and salaries of such clerks shall be determined by the board of education. [P. L. 1903 (2d sp. sess.) p. 26.]

72. All plans and specifications for the erection, improvement or repair of public school houses shall be drawn by or under the supervision of the business manager, if there be one, and shall be approved by the board of education. Said business manager, if there be one, shall supervise the construction and repair of all school-buildings, and shall report monthly to the board of education the progress of the work; provided, that repairs not exceeding the sum of one hundred dollars may be ordered by the business manager, and repairs not exceeding the sum of five hundred dollars may be ordered by the committee of the board having charge of the repair of school property, without the previous order of the board and without advertisement. The business manager, if there be one, shall superintend all advertisements for bids and the letting of all contracts. He shall inspect all work done and materials or supplies furnished under contract, and shall, subject to the approval of the board of education, condemn any work and reject any material or supplies which, in his judgment, do not conform to the specifications contained in the contract therefor, and shall perform such other duties as may be required by the board of education. [P. L. 1903 (2d sp. sess.) p. 26.]

These provisions are now found in Title 18, chapter 6, sections 45, 46, and 47, of the Revised Statutes of 1937.

There can be no question as to the power of the Board to have made the appointment of Rowland. Incidentally, Jersey City is one of the two cities of the first class in New Jersey, which is fixed by population and statute. Jersey City was a city of the first class in 1900 at the time of the appointment of Rowland.

The case of *Frank* v. *Board of Education of Jersey City*, 90 N. J. L. 273, was decided by the New Jersey Court of Errors and Appeals in 1916. In this case it appeared that "the plaintiff furnished certain work and materials to the City at the request of one John T. Rowland, Jr., supervising architect of said City." The evidence showed that Rowland had been permitted to order work and materials for a number of years and that the city had paid for same. It was shown that the work was done in an emergency before the board could meet to pass upon it. The plaintiff showed that he had been doing such work and furnishing such materials for a number of years and had also been paid. The lower court found for the plaintiff and, on appeal, the Court of Errors and Appeals affirmed. At page 277 the court said:

In the case under discussion, the School Law of the state, session of 1903, found in Pamph. L. 1904, p. 5, section 47; 4 Comp. Stat. p. 4740 et seq., provides that the board of education in a city school district such as Jersey City is vested with the power of making contracts in and by its corporate name, and by section 50 every such board shall have the supervision, control and management of the public schools and public school property in its district. It may appoint a superintendent of schools, a business manager and other officers, agents and employes as may be needed. Section 52 provides the board may at any time order repairs to school buildings to an amount not exceeding $500, may authorize the purchase of supplies to an amount not exceeding $250, without advertisement. Section 72 provides for a business manager, who shall supervise, if there be one, the construction and repair of all school buildings, and shall report monthly to the board of education the progress of the work; that repairs not exceeding the sum of $100 may be ordered by the business manager; and repairs not exceeding the sum of $500 may be ordered by the committee of the board having charge of the repair of school property, without the previous order of the board and without advertisement. In this statute, as will be seen, there is express authority for the appointment of an agent—a business manager. The term is immaterial. A supervising architect or vice principal might just as well be called an agent or business manager. There is also the recognition by the legislature of the fact that the board of education probably could not act in many cases without appointing such agents, since the very necessity of some cases requires that such a board should act through agents.

Although the above cited case stands for the proposition that the petitioner was at least an agent of the board of education of Jersey City, there is no evidence in these proceedings that the petitioner was "business manager" for the board or that he was an officer thereof.

It has been testified that Rowland took an oath of office. Nothing has been found in the New Jersey Statutes to indicate that he was required by law to do so. It was testified that every person employed by the board of education was required to take an oath of office. We do not think that this had the effect of establishing every employee an officer within the meaning of the law. It is well established that the taking of an oath or the giving of a bond does not make one *ipso facto* an officer. *Commissioner* v. *Murphy* (C. C. A., 2d Cir.),

70 Fed. (2d) 790; certiorari denied, 293 U. S. 596; *Buckner* v. *Commissioner* (C. C. A., 2d Cir.), 77 Fed. (2d) 297; *Watson* v. *Commissioner* (C. C. A., 3d Cir.), 81 Fed. (2d) 626; *Strauss* v. *Commissioner* (C. C. A., 9th Cir.), 97 Fed. (2d) 549. We are of the opinion that petitioner was not an officer of the State of New Jersey or a political subdivision thereof.

The next question for consideration is whether the petitioner was an employee of the board of education. An important consideration in the determination of this question is whether the board of education exercised the detailed control and direction over what the petitioner did and how he did it that characterizes the employer-employee relationship. See *Haight* v. *Commissioner* (C. C. A., 7th Cir.), 52 Fed. (2d) 779, 781; certiorari denied, 285 U. S. 537; *J. E. Houston*, 33 B. T. A. 237.

In *Metcalf & Eddy* v. *Mitchell, supra*, it was said:

> Nor do the facts stated in the bill of exceptions establish that the plaintiffs were "employees" within the meaning of the statute. So far as appears, they were in the position of independent contractors. The record does not reveal to what extent, if at all, their services were subject to the direction or control of the public boards or officers engaging them. In each instance the performance of their contract involved the use of judgment and discretion on their part and they were required to use their best professional skill to bring about the desired result. This permitted to them liberty of action which excludes the idea that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor. * * *

In *Burnet* v. *McDonough* (C. C. A., 8th Cir.), 46 Fed. (2d) 944, the question was presented as to whether an attorney who had agreed to act as counsel for a bridge district for a specified yearly compensation was an employee of the bridge district. The court held that he was not, citing numerous authorities therefor.

In *Mesce* v. *United States*, 64 Ct. Cls. 481, it was held (syllabus) as follows:

> The services of the plaintiff were engaged by the board of local improvements, an adjunct of the municipal government of the city of Chicago, as a building expert in connection with the valuation of buildings affected by certain local improvements in widening and opening streets. His service was not regular and continuous, but was for a particular transaction or transactions. *Held*, that the plaintiff's relation was that of an independent contractor, and not that of an officer or employee of the city, and that compensation received for his service was taxable income.

See *Kreipke* v. *Commissioner*, 32 Fed. (2d) 594; *Roberts* v. *Commissioner*, 44 Fed. (2d) 168; *Reed* v. *Commissioner*, 34 Fed. (2d) 263.

In *Blair* v. *Byers*, 35 Fed. (2d) 326, the facts were that Byers was counsel for the board of waterworks trustees of the city of Des Moines at a salary of $2,500 per annum. It was held that he was not an

employee of the municipality, but an independent contractor. The court, in referring to the fact that during a long period Byers was a lawyer engaged in the practice of his profession in the city of Des Moines, said:

> * * * We think this is sufficient to establish that he was free to engage, and was engaged, in other business for other clients; that he was a free professional agent as to the nature of his services and the advice that he would give. Nowhere in the record is it revealed to what extent, if at all, his services were subject to the control of the board of trustees. Furthermore, we are of opinion that an attorney who is engaged in this manner, who has not contracted to give to such a client his entire and exclusive services, does not thereby become an officer or employee in the sense of this statute. It is our judgment that Mr. Byers did not become such an employee of this political subdivision of the state of Iowa, and that the compensation which he received for services was therefore not exempt from income taxes.

In *Commissioner* v. *Modjeski*, 75 Fed. (2d) 468; certiorari denied, 295 U. S. 764, the court held that the compensation paid to the chief engineer of a joint bridge commission created by the State of New Jersey and the Commonwealth of Pennsylvania was not immune from taxation. The court said:

> The performance of the duties of the respondent's engagement here involved the use of his judgment and discretion; in fact it was using such that constituted the services for which he received compensation. The result to be accomplished by his engagement was through his best professional efforts. * * *

To the same effect see *A. Ten Eyck Brown*, 19 B. T. A. 568; petition for review denied (C. C. A., 5th Cir.), 55 Fed. (2d) 1076; certiorari denied, 287 U. S. 602. The court further said in *Commissioner* v. *Modjeski, supra*: "In the cases where the taxpayer was free to and did accept concurrent employment, the courts have generally regarded the taxpayer as an independent contractor."

In *Martin P. O'Connor*, 35 B. T. A. 402, the Board held that counsel for the board of education of Elizabeth, New Jersey, was an "employee" of the board and exempt from tax. Our decision in that case was not appealed to the courts.

In *Howard Ewart*, 35 B. T. A. 692, the Board held that Ewart's compensation received by him as counsel for 10 municipalities of New Jersey was taxable upon the ground that he was an independent contractor. In *Sigurd A. Emerson*, 35 B. T. A. 901, the Board held that Emerson was a township attorney appointed to the statutory office pursuant to statute and that his compensation was exempt from taxation, since it was received for the performance of ordinary duties as a township attorney. Both of these cases were appealed to the Circuit Court of Appeals for the Third Circuit, which, on July 22, 1938, affirmed our decision in the *Ewart* case, 98 Fed. (2d) 649, but

reversed our decision in the *Emerson* case, 98 Fed. (2d) 650, upon the ground that Emerson was an independent contractor whose compensation was taxable. A petition for certiorari in the *Emerson* case was denied by the Supreme Court, 305 U. S. 642. Although the facts in the proceeding at bar bear a close resemblance to those in the case of *Martin P. O'Connor, supra,* the Board is of the opinion that its decision in that case is not decisive of the present proceeding in the light of the decision of the Circuit Court of Appeals for the Third Circuit in *Sigurd A. Emerson, supra.*

During the taxable years the petitioner served the board of education of Jersey City as "supervising architect." The title aptly describes his position. While attending to such duties he was free to and did accept other employment than that of supervising architect. His services to the board of education of Jersey City were not prescribed by law or definitely defined. At the hearing of this proceeding the petitioner was asked:

At the time you were appointed, was there any statement made to you as to the duties you would have to perform?

A. No. I think that as I worked along, that I had a general knowledge of what I was to do. Really, I created the work that I did in taking care of the schools.

From a careful study of all of the evidence, the Board reaches the conclusion that the petitioner was not an officer or employee of the board of education of the city of Jersey City, New Jersey, but was an independent contractor. The petitioner is not therefore relieved from tax upon his compensation as supervising architect for the years 1933 and 1934.

*Judgments will be entered under Rule 50.*