IRA H. LOHMAN AND IDA MAY LOHMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98604. Promulgated October 28, 1941.

*John F. Rhodes, Esq.,* for the petitioners.
*R. P. Hertzog, Esq.,* for the respondent.

496

502

OPINION.

MELLOTT: The parties agree that petitioner was not an officer of the State of Missouri, and that the insurance department of the state is an instrumentality thereof, engaged in the exercise of an essential governmental function. Petitioner contends that the amount which he received was compensation for personal services rendered as an employee of the state and therefore exempt from Federal income tax.

In *Graves* v. *New York ex rel O'Keefe* (1939), 306 U. S. 466, the Supreme Court held that salaries of employees or officials of Federal

instrumentalities are not immune under the Federal Constitution from taxation by the states. The principle enunciated in the *Graves* case, *supra*, and *State Tax Commission* v. *Van Cott* (1939), 306 U. S. 511, that a state may impose an income tax on Federal employees is applicable to taxation by the Federal Government upon the income of state employees. See *Helvering* v. *Gerhardt*, 304 U. S. 405; *J. E. Huckabay*, 40 B. T. A. 9; *John T. Rowland*, 40 B. T. A. 11; affd., 115 Fed. (2d) 504.

In order to relieve state officers and employees from any hardship which might result from the retroactive application of a Federal income tax on their salaries, which, prior to the *Graves* decision, had been considered to be immune from such tax, Congress enacted the "Public Salary Tax Act of 1939." This act provides for the abatement, credit, or refund of income tax upon "compensation for personal service as an officer or employee of a state, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing" for all years prior to 1938, with certain exceptions not here material; but "the term 'officer or employee' has a meaning no broader than that formerly given to the same words in exemptive provisions of income tax statutes and regulations," *Coates* v. *United States*, 111 Fed. (2d) 609, affirming 28 Fed. Supp. 320, and "the immunity was to be no broader and no narrower" than it was prior to the *Graves* case. *Meigs* v. *United States*, 115 Fed. (2d) 13.

Upon brief the parties cite and discuss at length a large number of cases decided by the courts and this Board determining whether certain individuals were, or were not, employees of a state. The leading case on the question is *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514. In that case the taxpayers received compensation for personal services rendered as consulting engineers for various municipalities in connection with water supply and sewage assessments. In determining that they were independent contractors, rather than employees of the state, the Supreme Court said:

* * * In each instance the performance of their contract involved the use of judgment and discretion on their part and they were required to use their best professional skill to bring about the desired result. This permitted to them liberty of action which excludes the idea of that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor.

In *David A. Reed*, 13 B. T. A. 513, this Board held that the petitioner, who was engaged as a special attorney by the Attorney General of Pennsylvania to handle certain litigation, was not an employee of the Commonwealth of Pennsylvania and that the compensation

received by him for such services constituted taxable income, stating: "By the weight of authority, it appears that the crucial test lies in the right of control, or lack of it, which the employer may exercise respecting the manner in which the service is to be performed and the means to be employed in its accomplishment, as well as the result to be attained." In support of the conclusion reached the Board quoted from *Singer Manufacturing Co. v. Rahn*, 132 U. S. 518, in which the Supreme Court said: "The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, 'not only what shall be done, but how it shall be done,' "

The Circuit Court of Appeals for the Third Circuit (34 Fed. (2d) 263) reversed, on the ground that the taxpayer "was in constant communication with the Attorney General", and the latter had stated that "no important questions of policy were decided without his previous consultation with and authority from me." The Supreme Court (281 U. S. 669), on the authority of *Metcalf & Eddy* v. *Mitchell, supra*, reversed the Circuit Court and affirmed the decision of this Board, holding that Reed was not an employee of the state.

It would serve no useful purpose to discuss or attempt to distinguish all of the cases cited by the respective parties upon brief. The conclusions reached may not always have been consistent. (Compare, for example, *Burnet* v. *Livezey*, 48 Fed. (2d) 159, strongly relied upon by petitioner, and *Haight* v. *Commissioner*, 52 Fed. (2d) 779, relied upon by respondent.) We have referred specifically to the *Reed* case because of the many points of similarity between the facts in it and the facts in the instant proceeding. In each, eminent attorneys had been employed as "special counsel" for the purpose of protecting the interests of the state. The designation or employment was made by a state officer in conformity with the state law. The attorneys were in frequent communication with the state officers and "no important questions of policy were decided" without first consulting them. The responsibility for the litigation in each instance rested primarily upon the state officers who made the designation or appointment. In the *Reed* case the taxpayer was paid out of moneys appropriated by the state. In the instant proceeding the method of payment will be discussed later; but the payment was not made out of funds appropriated by the state. The *Reed* case, therefore, is respectable authority for denying the claimed exemption from tax in the instant proceeding unless there is a substantial difference in the facts. Petitioner contends that there is.

Petitioner argues that if the evidence of the "power to employ and discharge, to add to and subtract from the lawyers, without the con-

sent of any of them", and "the manifold evidences of control and power of control" shown by this record, had been present in the *Reed* case the Supreme Court undoubtedly would have sustained the Circuit Court's holding that the compensation was exempt from tax. That, of course, is speculation. It may be pointed out, however, that for aught which appears in the findings of fact in the *Reed* case the State of Pennsylvania apparently had as much power to employ, discharge, add to, and subtract from its special counsel as the State of Missouri or its officers had in the instant proceeding. The latter part of petitioner's argument has more merit; so the evidence upon which petitioner relies to show control and power of control will now be considered.

Petitioner and the other attorneys testified that Thompson kept in touch with their activities and at times directed what he wished to have done, who should conduct certain examinations, or where they should be held. This was corroborated by Thompson. On one occasion, as shown in the findings, he directed that testimony be taken to show the experience of certain companies rather than stipulating that as a fact, and on another he ordered that his theory of rate making be preserved in the pleadings. Thompson stated, however, that he did not "presume" to tell learned counsel how they should conduct the hearings or defend the litigation. This was left to their discretion. O'Malley testified to substantially the same effect, stating that he relied entirely upon the ability and professional skill of the attorneys to represent the state properly in the rate litigation. Practically all of petitioner's services were performed during the administration of Thompson, O'Malley having advised him, almost immediately after becoming superintendent, that he was not thereafter to represent the state in the litigation. This is the substance of the evidence relating to control of petitioner. There is evidence, however, indicating that the governor and the superintendent of insurance did exercise additional control over the litigation. They, or at least O'Malley, conferred with representatives of the insurance companies and, independent of the attorneys, agreed upon the terms of a settlement, including the amount to be paid to the attorneys for their services. Petitioner, because of his previous connection with the litigation and his rights under his contract, was required to sign the stipulation of settlement. When this was done the $10,000,000 impounded in the Federal court was released and the check for $423,600 was delivered to Barker as trustee. But the funds which had been impounded in the Circuit Court of Cole County could not be released to the companies until and unless the Supreme Court of Missouri should either reverse the holding of that court to the effect that the funds must be returned to the policyholders,

or approve the settlement, releasing to the companies 80 percent of the impounded fund. In connection with the proceeding in the Supreme Court of Missouri it appears that the governor and the superintendent did give some of the attorneys additional instructions. O'Malley ordered Barker, Weatherby, and Jacobs to present the matter to the Supreme Court solely upon the stipulation. The Governor ordered O'Malley to direct that it be presented to the court upon the merits and such directions were given. Apparently the settlement was before the Supreme Court, however; for the court, after passing upon the merits, declined to approve it.

It may be that more control was actually exercised by the Missouri officers in the instant proceeding than was exercised by the Pennsylvania officers in the *Reed* case; but the responsibility for the proper presentation of the state's case in each instance rested upon the officers, and such control as was exercised seems to have been entirely compatible with the relation normally existing between public officials charged with the responsibility of protecting the rights of the state and attorneys, who, for a fee, undertake the actual, necessary legal work.

Petitioner urges that he was engaged for general services and not to accomplish any specific purpose. Thompson testified that the attorneys "were employed to handle that fire insurance case"; that he "hired them for that job"; that nothing was said to petitioner at the time of his appointment about performing any other work; and that he had a regular monthly salaried employee who handled the ordinary legal work of the department. The contract of July 3, 1930, specifically stated that the attorney general and the superintendent had, according to law, designated petitioner and Bowersock "to represent them as special counsel" in the fire insurance rate litigation cases and specifically referred to the cases pending in the Federal court and in the Circuit Court of Cole County. Weatherby testified that the 16⅔ percent cases were "the only litigation Lohman was in" and petitioner testified that the length of his employment depended primarily on how long the rate litigation lasted. It is true that petitioner testified he was consulted by Thompson and Weatherby at times upon matters not involved in the fire insurance rate litigation. It appears from his testimony, however, that such instances were few; and the evidence does not indicate that they required any appreciable amount of his time or labor. The conclusion is inescapable that petitioner was employed for the specific purpose of assisting in protecting the interest of the state and the policyholders in the fire insurance rate litigation; that his employment was for a limited rather than for a general purpose; and that the compensation was paid to him solely for the services rendered in connection with the rate litigation.

But, it is contended, the question whether petitioner and the other attorneys were employees of the state has been set at rest by the decisions of the Supreme Court of Missouri in *Aetna Insurance Co. v. O'Malley*, 343 Mo. 1232; 124 S. W. (2d) 1164; *State ex rel Garwood Realty Co. v. Dinwiddie*, 343 Mo. 592; 122 S. W. (2d) 912; and *State ex rel Lucas v. Blair*, 144 S. W. (2d) 106. *Aetna Insurance Co. v. O'Malley, supra,* involved the allowance of attorney fees to Barker, Jacobs, and Weatherby in the so-called "Restitution Cases." The superintendent of insurance, in November 1922, had made an order for a reduction of 10 percent in insurance rates. This reduction was resisted by the companies in court for a period of years, during which premiums were collected at the old rate. In August 1929 the Supreme Court of Missouri upheld the order of the superintendent and the insurance companies began refunding to the policyholders the excess premiums collected during the pendency of the litigation. When, in 1930, it became apparent to the superintendent that only a portion of the excess premiums had been refunded, he employed the three attorneys to recover the balance of the excess premiums collected by the companies and agreed that, if successful, they should be paid from the fund for their services such an amount as the court deemed adequate, but if they were unsuccessful they were to receive no pay. After recovery of the fund, the trial court made an allowance to the attorneys. The Supreme Court of Missouri held that although the superintendent, with the approval of the governor, had statutory power to employ attorneys, he did not have the power to contract that their compensation should be paid out of the fund to be collected. In its opinion, the court stated that "the only way such attorneys can be paid is like any other expense of the insurance department, that is, by an appropriation of the legislature", and that they "must look to the legislature for the payment of their fees." Similar holdings were made in *State ex rel Garwood Realty Co. v. Dinwiddie* and *State ex rel Lucas v. Blair, supra,* with reference to the funds impounded in the Cole County court during the pendency of the 16⅔ percent rate litigation. The court was not required to determine whether the attorneys were employees of Missouri and did not do so. Such cases as *Bacon & Sons v. Martin*, 305 U. S. 380, enunciating the principle that the construction of a state statute by a state court is binding upon a Federal court, are therefore inapplicable.

The question whether petitioner was an employee of the State of Missouri is essentially a question of law. Most of the basic facts are not seriously in dispute. Reference has been made to some of the circumstances relied upon especially by petitioner to show that he was an employee. In our opinion the evidence does not justify such finding or conclusion; but even if petitioner were an employee

of the State of Missouri, his claim for exemption could not be sustained. He has not shown that any part of the compensation which he received in 1936 was paid to him by the State of Missouri. Obviously it was paid by the insurance companies, either out of the portion of the impounded funds recovered or from other funds in their possession. The Constitution of Missouri requires that all moneys received by the state from any source shall go into the treasury and that none shall be paid out except in pursuance of an appropriation by law. Sec. 43, Art. IV;[1] sec. 19, Art. X.[2] Since even the general assembly has no power to divert any moneys received by the state "except in pursuance of regular appropriations made by law" it can not be found as a fact, upon the record before us, that the state received the money for the attorneys' fees from the insurance companies and paid to petitioner his portion of the total.

Upon brief petitioner argues that the source of the fee is immaterial. He relies particularly upon *Commissioner* v. *Stilwell*, 101 Fed. (2d) 588 (certiorari dismissed on motion of petitioner, 307 U. S. 648), in which it was held by the Circuit Court of Appeals for the Seventh Circuit that the compensation, received by a master in chancery in Illinois in the nature of fees assessed against the losing party as part of the costs of litigation, was exempt from the Federal income tax. Judge Evans filed a vigorous dissenting opinion, espousing the view that *Helvering* v. *Therrell*, 303 U. S. 218, and *Helvering* v. *Gerhardt*, *supra*, required the denial of the claimed immunity from tax "when the interference with the state governmental functions, through the imposition of the Federal income tax, is so uncertain as to be conjectural, theoretical or speculative."

In *Helvering* v. *Gerhardt*, *supra*, the Supreme Court stated that judicial pronouncements "establish, two guiding principles of limitation for holding the tax immunity of state instrumentalities to its proper function. The one, dependent upon the nature of the function being performed by the state or in its behalf, excludes from the immunity activities thought not to be essential to the preservation of

---

[1] ART. IV—

SEC. 43. *Appropriations, order of, must be by law—revenue to go into treasury.*— All revenue collected and moneys received by the State from any source whatsoever shall go into the treasury, and the General Assembly shall have no power to divert the same, or to permit money to be drawn from the treasury, except in pursuance of regular appropriations made by law. * * *

[2] ART. X—

SEC. 19. *Money to be paid as appropriated—limit—how continued—receipts and expenditures.*—No moneys shall ever be paid out of the treasury of this State, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made, or a warrant shall have issued therefor, within two years after the passage of such appropriation act; and every such law, making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied; and it shall not be sufficient to refer to any other law to fix such sum or object. A regular statement and account of the receipts and expenditures of all public money shall be published from time to time.

state governments even though the tax be collected from the state treasury. * * * The other principle, exemplified by those cases where the tax laid upon individuals affects the state only as the burden is passed on to it by the taxpayer, forbids recognition of the immunity when the burden on the state is so speculative and uncertain that if allowed it would restrict the Federal taxing power without affording any corresponding tangible protection to the state government; even though the function be thought important enough to demand immunity from a tax upon the state itself, it is not necessarily protected from a tax which well may be substantially or entirely absorbed by private persons." The Court pointed out that "During the present term we have held that the compensation of a state employee paid from the state treasury for his service in liquidating an insolvent corporation, where the state was reimbursed from the corporate assets, was subject to income tax. *Helvering* v. *Therrell, McLoughlin* v. *Commissioner*, 303 U. S. 218."

In *Saxe* v. *Shea*, 98 Fed. (2d) 83 (certiorari dismissed on motion of petitioner, 305 U. S. 665), the Circuit Court of Appeals for the Second Circuit applied the second principle mentioned in the *Gerhardt* case and held that an individual appointed by New York courts as referee or special guardian to act in the specific cases was not exempt from Federal income taxation on compensation paid him by parties to guardianship proceedings or from funds under the courts' control, and not from the state treasury, since imposition of the tax could not increase to the state the cost of administering justice. The court said: "In the light of the *Gerhardt* opinion we believe that the source of appellants' compensation is alone enough to defeat his claim of constitutional immunity from Federal income taxes * * *." This language was quoted with approval by the Circuit Court of Appeals for the Third Circuit in *Commissioner* v. *Church*, 103 Fed. (2d) 254, which said: "The important consideration is the source of the compensation. When it comes from the litigants and not the state, the taxation thereof can not possibly impose a substantial burden upon the state." The Circuit Court of Appeals for the Eighth Circuit seems to have adopted the same view in *Pickett* v. *United States*, 100 Fed. (2d) 909, though it did not discuss the question at any length. It, however, quoted from the opinion in the *Gerhardt* case to the effect that "When immunity is claimed from a tax laid on private persons, it must clearly appear that the burden upon the state function is actual and substantial, not conjectural", and denied the immunity claimed. This Board has similarly applied the Supreme Court opinions in the *Therrell* and *Gerhardt* cases in *Mercer McCall Tharpe*, 37 B. T. A. 1128; *Frank Aranow*, 38 B. T. A. 1089, and *James F. Curtis*, 39 B. T. A. 366; affd., 110 Fed. (2d) 1014.

We are of the opinion and hold that petitioner has failed to show that the compensation in issue was received by him as an employee of the State of Missouri; that he has failed to show it was paid to him by the state or resulted in any actual or substantial burden upon it; and that he has failed to prove that the Commissioner committed any error in determining the deficiency in tax.

Reviewed by the Board.

*Decision will be entered for the respondent.*